(No. 24774.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BARNEY LIND, Plaintiff in Error.

*Opinion filed December 15, 1938.*

LINDAUER & LINDAUER, and A. B. DAVIS, for plaintiff in error.

OTTO KERNER, Attorney General, LOUIS P. ZERWECK, State's Attorney, and A. B. DENNIS, (R. V. GUSTIN, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Barney Lind and his sixteen-year-old son, Edwin, were jointly indicted, tried and convicted in the circuit court of St. Clair county for the larceny of thirty chickens, valued at $20. The elder Lind seeks review of his conviction by this writ of error.

When Barney Lind, a coal miner, arrived at his home in Lebanon from work about 3:30 P. M. on September 11, 1937, his son, Edwin, asked him to go dove hunting. It was the first day of the open season. They had an early supper and left together in their automobile shortly after 4:00 P. M., one taking a shotgun and the other a rifle. After hunting along a railroad right-of-way, where the boy

killed four doves, they crossed into a nearby stubble field of a farm owned by Mike Hohrein. There were dead trees and a pond near this field, but no doves were found there and no shots were fired. As darkness approached they quit hunting and on the way back to their car left the stubble field and passed through the Hohrein farm yard. No one was living on the farm at the time as three weeks earlier Hohrein had conducted a public sale which Barney Lind had attended, buying various small articles of little value. While Lind and his son were passing between the house and the barn, two shots were fired at them without warning. Both were knocked down, the father being shot in the body and his son in the leg. They recognized Hohrein as the one who shot them, and asked for mercy. Hohrein then left without rendering any aid to them, and notified police officers and a doctor to come to his farm as he had shot some prowlers. With some difficulty, Lind and his son washed their wounds at the Hohrein well, and reached their automobile. They drove on home without delay and called a physician to treat them, and the father was later taken to a hospital. As a result of Hohrein's call, deputy sheriffs and other officers went to the Lind home and placed the father and son under arrest on a charge of stealing some thirty Rhode Island Red chickens from Hohrein's farm five days earlier, September 6. Soon after the father and son were removed to jail, Hohrein and several deputies came to the Lind home and talked to Mrs. Lind. They had no search warrant. There is a dispute over whether they secured her permission to search the premises for the chickens or whether, as she and her sisters said, they searched without asking her. The officers opened the henhouse and, with the aid of Hohrein and a flash-light, found thirty-one chickens which Hohrein claimed and seized as his own. The evidence shows that she and her husband had hatched and raised Rhode Island Red chickens that year, and chickens of the same breed remained there after Hohrein removed

those claimed by him. Two old pairs of shoes which Hohrein claimed belonged to his deceased father were also discovered and taken. Barney Lind testified that he had bought the shoes with some old magazines in a grab-package lot, at the Hohrein sale, for twenty-five cents. Some jelly which Mrs. Lind testified had been put up by her was also seized and claimed by Hohrein.

Prior to the commencement of their trial, Lind and his son filed a motion to suppress all evidence obtained by a search of their premises without a search warrant and to suppress all testimony pertaining to the same, claiming it was obtained by an illegal search and seizure, in violation of their rights guaranteed by section 6 of article 2 of the constitution. The circuit court denied their motion and this ruling is assigned as error.

There is direct and irreconcilable conflict in the testimony here as to whether Lind's wife gave her consent to the officers to search the premises. She and her two sisters, who were with her, emphatically deny that such consent was given, while the officers testified to the contrary. Even if it be assumed that she consented to the search, the more serious question arises whether the wife's consent to a search by men she knew to be a sheriff and deputy sheriff can operate as a waiver of her husband's constitutional rights. This point has never been squarely raised or passed upon in this State. In *People* v. *Mizzano,* 360 Ill. 446, the wife's waiver was not really in issue, inasmuch as the three defendants, after their arrest, had already admitted the officers to that part of the premises where some $2500 worth of stolen property was found saying: "You can have whatever is in there." In deciding the issue this court said: "The facts in this case do not bring it within those cases cited by counsel for plaintiffs in error." We have searched the prior decisions of this court and find no other cases where the issue presented was the waiver, by his wife, of a defendant's constitutional protection against illegal search

and seizure. In *People* v. *Marvin*, 358 Ill. 426, cited by the People, we merely emphasized the well-known rule that the constitutional prohibition does not extend to all searches and seizures but only is a guard or shield against unreasonable ones. (*People* v. *McGurn*, 341 Ill. 632; *People* v. *Patterson*, 354 id. 313.) In the *Marvin case*, as in others before and since, we pointed out that there was no search involved when the contraband articles were in open view— that a search implies a prying into hidden places for that which is concealed. This principle has no application in the present case because the opening of henhouse gates and doors at night, and the searching with flash-lights to discover chickens allegedly stolen, is an invasion of property rights which any reasonable person would say would constitute an illegal search, if made without consent or a search warrant. Another important difference was pointed out in *People* v. *Poncher*, 358 Ill. 73, where the oft-confused distinction between search of one's person for a concealed weapon and the search of one's property was clearly made. There, the exhibits mentioned were held to be unlawfully obtained and erroneously admitted in evidence. This court said: "The opinion in that case [*North* v. *People*, 139 Ill. 81] cannot be construed to mean that if a person is lawfully arrested on a criminal charge which involves his possession of particular property the officers are at liberty to search his home, his place of business or buildings of which he may have the right of occupancy, without first obtaining a search warrant therefor. If it could be so construed, then a person might be arrested upon a public street and after his arrest his home could be entered and searched without a warrant. What the [*North*] opinion means to hold, and does hold, is, that if a person is arrested he may be searched for weapons and for property in his immediate personal possession which are involved in the crime charged." Although a question of waiver was not at issue in *People* v. *Brocamp*, 307 Ill. 448, we reversed the judg-

ment of conviction where a defendant's home was illegally searched, saying: "The officers had no right whatever to enter his home by force *or by permission of another in his absence* and search his premises without first obtaining the proper warrant for such search and seizure, as required by our constitution."

In other jurisdictions, we find some conflict of authorities, but by far the greater number and weight of judicial decisions favor the view that a wife cannot waive her husband's constitutional immunity against search of his dwelling. In a recent decision (1936) the Supreme Court of Ohio passed squarely upon this issue in *State* v. *Lindway*, 131 Ohio St. 166, 2 N. E. (2d) 490, holding: "Assuming that a wife in the absence of her husband may waive his constitutional immunity against search of his dwelling as granted by section 14, article 1, of the constitution of Ohio, such waiver cannot be said to have occurred where the testimony as to the wife's assent is conflicting, and there is a probability that any assent given was by reason of the coercive influence of an officer or officers of the law." We find two reasons given to sustain this holding. First, that the constitutional barrier to unreasonable searches and seizures is in the nature of a personal privilege of such high character that it cannot be waived by any one except the person whose rights are invaded, or by some one specifically authorized to act for him in the matter. (Underhill on Criminal Evidence, (4th ed.) sec. 800, pp. 1456, 1457; Cornelius on Search and Seizures, (2d ed.) sec. 24, p. 71; 56 Corpus Juris, 1182, 1183; 58 A. L. R. 740.) The second, and more commonly expressed view, is that even if defendant's wife possesses the authority to waive his constitutional rights and does so when unexpectedly faced by the coercive influence of officers of the law, such assent as she may give to the search, especially where there is conflicting testimony thereon, lacks the attributes of an invitation and is, therefore, insufficient to constitute a waiver.

This principle is expressed in so many cases, State and Federal, that it is, without question, the prevailing American doctrine on the subject. Thus, in *Amos* v. *United States,* 255 U. S. 313, 65 L. ed. 654, two internal revenue collectors went to defendant's home, in his absence, and told his wife they were revenue officers and had come to search the premises for violations of the Revenue law. Thereupon she permitted them to enter and search the premises, without a warrant. They found two bottles of whisky under a quilt on a bed. The Supreme Court of the United States held the search illegal and reversed the conviction in this language: "The contention that the constitutional rights of defendant were waived when his wife admitted to his home the government officers, who came, without warrant, demanding admission to make search of it under government authority, cannot be entertained. We need not consider whether it is possible for a wife, in the absence of her husband, thus to waive his constitutional rights, for it is perfectly clear that, under the implied coercion here presented, no such waiver was intended or effected."

In the case of *Maupin* v. *State,* 260 Pac. 92, the Criminal Court of Appeals of Oklahoma, under similar facts, said: "The officers went to the residence while defendant was away and his wife met them at the door. They advised her they were officers and wanted to search the premises, and she said: 'Go ahead.' Before going into trial defendant filed a motion to suppress the evidence as obtained by an unlawful search. The place searched was the private residence of defendant, occupied as such. * * * The statement of the wife to the officers made in the absence of her husband is not a waiver of his constitutional rights. The motion to suppress should have been sustained."

The doctrine of implied coercion, defeating a claim of consent by a wife of the defendant, was likewise adopted in *Duncan* v. *Commonwealth,* 198 Ky. 841, 250 S. W. 101. It appeared in that case that a sheriff and deputy sheriff

came to defendant's home in his absence, and the sheriff informed the wife that he was the sheriff and that he understood that there was some whisky there. Testimony was given by the sheriff to the effect that the defendant's wife told him to come in and search for the whisky. The court, relying on *Amos* v. *United States, supra,* held that there was no effectual waiver by the wife, authorizing the search. See, to the same effect, *Potowick* v. *Commonwealth,* 198 Ky. 843, 250 S. W. 102; *Veal* v. *Commonwealth,* 199 Ky. 634, 251 S. W. 648; *Meredith* v. *Commonwealth,* 215 Ky. 705, 286 S. W. 1043; *Rose* v. *State,* 254 Pac. (Okla.) 509. In the case of *Carignano* v. *State,* 238 Pac. (Okla.) 507, it was held: "The constitutional rights of a person to be secure against unreasonable searches and seizures and self-crimination were not waived when his wife in his absence failed to object to officers making a search of his premises under authority of an illegal search warrant."

In *Tobin* v. *State,* 255 Pac. (Wyo.) 788, an officer, in the absence of defendant, was let into his building by an employee who was working for defendant. He had no search warrant and was not invited in. On the trial, in answer to a question whether he had made any objections at the time the officer came in, the employee answered: "Well, I recognized him as the sheriff and I didn't think it would help any to make any objection." The Supreme Court of Wyoming held the petition to suppress the evidence should have been granted, as the employee's action did not constitute a consent to an unlawful search but was merely a demonstration of his regard for the supremacy of the law. Likewise, in Michigan, it was held that where the wife owned the home as her separate property, her husband could not, by written waiver, consent to a search of the premises for liquor violations without a search warrant.

In *Humes* v. *Taber,* 1 R. I. 464, we find another case where the wife had consented that a law officer might enter and search the dwelling house of her husband, the defend-

ant. In answer to the People's claim that the law implied such authority to the wife, in the absence of her husband, the Rhode Island Supreme Court said: "We are satisfied the charge in this particular was incorrect. The law implies no such authority. Undoubtedly, the wife's authority extends to the rendering of the ordinary civilities of life. If she invites a neighbor, friend, or even a stranger, to enter the house in the way of hospitality, such invitation would, under ordinary circumstances, be a valid license so to do. But to imply an authority to the extent contended for by the defendant in the present case would be dangerous. * * * No case has been cited by the counsel for the defendant which gives any countenance to such a doctrine; it is unsupported by principle and would be mischievous in its consequences."

From the foregoing authorities, we believe that, under the circumstances of this case, the motion to suppress the evidence obtained through the search and seizure of defendant's premises, without a search warrant, should have been allowed. As said before, the evidence, as between the wife and her sisters on the one hand and the officers on the other, was distinctly contradictory. The shooting of her husband and sixteen-year-old son while they were out dove hunting, the visit of the doctor to the house, followed by the officers who removed both the father and son to jail, undoubtedly left Mrs. Lind in a highly nervous state. These untoward events were followed shortly by the alleged request of the officers, and her consent, if obtained, was under the circumstances so tinged with official coercion that it cannot be said to have been freely given. We hold that, under these or similar conditions, the wife cannot waive her husband's constitutional rights, and that the search and seizure made without a search warrant was illegal.

The record further shows that Clyde Holdner, an alibi witness for Lind, was asked on cross-examination if he had not been paroled from the State of Michigan to a

deputy sheriff of St. Clair county. An objection to this question was overruled and the witness admitted the fact. This ruling was clearly erroneous since proof that a witness has been convicted of an infamous crime, in order to discredit his testimony, can be made only by the introduction of the record of the conviction or a properly certified copy thereof. (*Bartholomew* v. *People,* 104 Ill. 601; *People* v. *Brocamp, supra; People* v. *Lehner,* 326 Ill. 216.) The State's attorney improperly asked this question, and the court erred in not sustaining defendant's objection to it.

For the reasons given, the judgment of the circuit court is reversed and the cause is remanded.

*Reversed and remanded.*