THE STATE v. GEORGE WILKERSON, Appellant.—159 S. W. (2d) 794.

Division Two, March 13, 1942.

*Sam M. Wear* and *W. L. Vandeventer* for appellant.

*Roy McKittrick*, Attorney General, and *W. O. Jackson*, Assistant Attorney General, for respondent.

■ BARRETT, C.—George Wilkerson was convicted and sentenced to six years' imprisonment for knowingly receiving a stolen automobile.

The only question involved in his appeal is whether or not his constitutional security against unreasonable search and seizure (Const. Mo., Art. 2, Sec. 11) was violated by the admission of certain evidence during his trial. Consequently, only such facts are set forth as bear on this problem, suffice it to say that aside from the testimony and invasion complained of the evidence was sufficient to warrant and sustain the jury's finding of his guilt.

In July, 1940, Nora Anglum's 1938 Chevrolet automobile was stolen from her garage in Ash Grove. On January 16, 1941 the sheriff of Greene County, the chief of detectives of the City of Springfield and a member of the Missouri State Highway Patrol went to Wilkerson's farm about twenty miles northeast of Springfield with a search warrant and in the absence of Wilkerson, but in the presence of his wife, searched the premises and in a closed garage about thirty-five feet from the house found an automobile which was seized, taken to Springfield and stored in Lester Williams' garage.

■ Before Wilkerson's trial began on March 6, 1941, he filed a motion to quash the search warrant and to suppress the evidence. After a hearing the court sustained the motion, quashed the search warrant and suppressed the evidence thus obtained. During the hearing on the motion the sheriff testified that he read the warrant to Mrs. Wilkerson and told her he understood some stolen property was there and she said, "That is all right, go ahead and search." The sheriff also testified the automobile was the only property seized under the search warrant.

The same day, as soon as the hearing on the motion to suppress was concluded, the trial of the case began. The State proved by Mrs. Anglum that her 1938 Chevrolet sedan, Motor Number 1595161, had been stolen on the night of July 9, 1940. Hugh Wagner, who worked for Wilkerson, testified, in substance, that he went to Ash Grove with Wilkerson when Mrs. Anglum's car was received by Wilkerson and driven to his farm near Fair Grove. Wilkerson's 1938 Chevrolet sedan, Motor Number 1378009, had been involved in an accident and Wilkerson, with Wagner's assistance, exchanged the bodies, putting Wilkerson's car body on Mrs. Anglum's chassis. Some of the doors and fenders on Wilkerson's car had been damaged and these parts were exchanged and the car was painted. The motor number on Mrs. Anglum's car was obliterated and Wilkerson's motor number

substituted with dyes. The extra parts were sold to a salvage company in Springfield.

The second day of the trial the jury was excluded and the sheriff testified that he had had the automobile in his custody since seizing it under the search warrant and after the court sustained the motion to quash and suppressed the evidence he had returned the automobile to Mr. and Mrs. Wilkerson and then reseized it. The circumstances with reference to this were that Wilkerson was in jail, being unable to give bond, and the evening of the first day of the trial was conferring with his attorneys in a conference room in the jail when the sheriff came in, threw the keys to the car on a table and left after Wilkerson picked them up. The sheriff stated that he reseized the car because it had "tampered" motor numbers on it and had it in his custody in the Downtown Garage. Neither Wilkerson nor his wife ever had physical possession of the automobile after the original seizure.

The prosecuting attorney then stated he intended to "show the condition of this car since it was returned to the defendant" after having it examined again the night before and after the second seizure. The court overruled the defendant's objections to this line of evidence, stating, however, that it "should be limited to what has been observed and discovered since the constructive surrender of the car to Wilkerson."

The jury was called in and the State offered in evidence its Exhibit "D," which was Wilkerson's certificate of ownership showing him to be the owner of a 1938 Chevrolet automobile, Motor Number 1378009. The defendant objected to the introduction of the certificate because it had been in the glove compartment of the seized car. It was then developed that when the car was first seized at Wilkerson's farm the sheriff took the certificate from the glove compartment of the car. Mrs. Wilkerson objected to his taking it so he handed it back to her and she put it in her pocketbook. When he brought the seized automobile in to Springfield he brought Mrs. Wilkerson along and took her to the prosecuting attorney's office. It does not appear whether or not he had her under arrest, but as soon as they were seated in the prosecuting attorney's office he demanded the certificate and she handed it over to him. The court then admitted the certificate in evidence.

The sheriff gave no further evidence with reference to the automobile, but Sergeant Viets of the Missouri State Highway Patrol, who was with the sheriff when the car was seized originally, testified that the night before he had examined the automobile at the Downtown Garage, compared the motor number on Exhibit "D," Wilkerson's certificate of ownership, to the motor number on the car and they were the same. He then described in detail that the original numbers had been obliterated, but upon examining the block under heat the

original numbers appeared and were the same as the numbers on Mrs. Anglum's certificate of ownership.

Following Sergeant Viets, George McNally of Kansas City testified for the State that he was a special agent for the Automobile Protective and Information Bureau and the night before had examined an automobile in the Downtown Garage bearing the motor number shown on Exhibit "D" (Wilkerson's certificate of ownership). He qualified as an expert with over twenty years' experience in such matters and described fully various marks on the motor indicating the original motor numbers had been filed off and different numbers (Wilkerson's) stamped on the block. He described the process by which the original numbers (Mrs. Anglum's) were made to appear when heat was applied. He made enlarged drawings of the various numbers found on the car, illustrating the difference in the character of the original figures and those subsequently stamped on the block.

The defendant objected to the introduction of the evidence given by the sheriff, particularly with reference to the certificate of ownership, Exhibit "D," the evidence of Sergeant Viets and the evidence of McNally pertaining to their examination of the automobile the previous night and after it had been reseized by the sheriff for the reason the evidence had been obtained by reason of the illegal search warrant and was, therefore, inadmissible. The defendant's theory is that the court permitted the witnesses to testify to information or facts which they obtained by reason of their having the illegally seized property in their possession. He contends that the attempted redelivery of the automobile to him was ineffectual and that the court, though holding the illegally seized property could not be used, permitted the witnesses to testify to what they saw on the property and thus invaded his constitutional security against unreasonable search and seizure.

The testimony of each of the above witnesses presents a separate problem, two of which have never been passed on by this or any other court, at least under similar facts, so far as we have been able to discover.

We have adopted the rule that evidence obtained by an illegal search and seizure by the State is not admissible against the defendant in a criminal case for the reason that the admission of such evidence violates his constitutional security against unreasonable search and seizure. [State v. Owens, 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383; State v. Lock, 302 Mo. 400, 259 S. W. 116; State v. Tunnell, 302 Mo. 433, 259 S. W. 128; State v. McAnally (Mo.), 259 S. W. 1042.] For the history of the amendment to the Constitution of the United States (Const. Amend., Art. IV) and of the various states see and compare: 34 Har. L. R. 361; 1 Cooley, Constitutional Limitations, pp. 610-636; Cornelius, Search & Seizure, Secs.

7-9, pp. 34-46; Boyd v. United States, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. 524; Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. 341. The views of the various jurisdictions as to whether or not evidence obtained by an admittedly illegal search and seizure is admissible are set forth in the following collections of cases: 24 A. L. R. 1408; 32 A. L. R. 408; 41 A. L. R. 1145; 52 A. L. R. 477; 88 A. L. R. 348; 22 C. J. S., Sec. 657, pp. 1005-1032; 8 Wigmore, Evidence, Secs. 2183-2186.

We believe that some consideration of the reasons underlying the rule against the admission of such evidence will aid in the determination of this case. The rule is vehemently denounced and criticized by Professor Wigmore as being based on "misguided sentimentality" and a "mechanical idea of justice." His notion is that an offending officer may be punished in some appropriate manner, either by the court or at the instance of the accused, and that it is a perversion of the rules of evidence to use them as a means or method of indirect punishment by excluding the illegally obtained evidence. [8 Wigmore, Evidence, Secs. 2183-2184b, pp. 4-50.] On the other hand the reasons given for excluding the evidence are that the sole object of a search and seizure is to obtain evidence and, if the courts permit the use of illegally obtained evidence, the individual's constitutional security or guaranty against unlawful search and seizure is of no value. When the officers make an unlawful search and illegally seize property they directly violate the Constitution and a right specifically reserved to the accused and the exclusion of the evidence thus obtained is the only adequate means of giving effect to and protecting that right. The contrary view "reduces the Fourth Amendment to a form of words." [Silverthorne Lumber Co. v. United States, 251 U. S. 385, 64 L. Ed. 319, 40 Sup. Ct. 182; Boyd v. U. S., supra; Weeks v. U. S., supra; 5 Jones, Commentaries on Evidence, Sec. 2079, p. 3880; 40 Univ. Mo. Bull. 13-21.] The leading case in Missouri and one of the leading cases in the United States is Judge WHITE's opinion in State v. Owens, supra, with which Professor Wigmore disagrees but calls a "careful opinion." [8 Wigmore, Evidence, p. 20.] Among the many pertinent observations made with respect to the rule Judge WHITE said, 302 Mo. l. c. 375:

"The State argues further that the constitutional provision is not self-enforcing, and no statute has been passed to punish an offending officer or provide a remedy to the person injured for the infraction of his constitutional right. It is true there is no adequate remedy available to the person injured whereby he may obtain *redress after* the act. He would have an action for an unlawful trespass or for assault, at common law. The Constitution adds nothing to his rights in that respect. *The only remedy which can possibly benefit him is a preventive one.* . . .

` "There is in fact no remedy, no method, by which the citizen can receive the protection of the Constitution except the method here contended for by the appellant. No case is mentioned, and I believe none can be found, where this constitutional right was protected to the citizen except in the suppression of evidence discovered by unlawful search."

Applying the doctrine to this case, there can be little doubt that it was error to permit Sergeant Viets to examine the reseized automobile on the same day the court suppressed the evidence because it had been illegally seized and then testify to what he observed. We think it unnecessary to decide whether or not the car, technically, had been "redelivered" to Wilkerson. Obviously, when the court suppressed the evidence at the beginning of the trial the State found itself in a dilemma and the attempted redelivery and reexamination of the automobile was only a subterfuge. Viets is a state officer. He aided in making the original seizure and the only possible theory upon which his evidence could be admitted is that he learned or observed something new about the automobile—something he overlooked when he aided in seizing it and examining it the first time. "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that *it shall not be used at all.*" [Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392.]. Speaking of the above case Mr. Justice FRANKFURTER said: "This Court found that the logically relevant proof which Congress had outlawed, it outlawed because 'inconsistent with ethical standards and destructive of personal liberty.' . . . To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed 'inconsistent with ethical standards and destructive of personal liberty.' " [Nardone v. United States, 308 U. S. 338, 342; Flagg v. United States, 233 Fed. 481; State v. Pierce (Mo. App.), 269 S. W. 406.] That the automobile had altered motor numbers on it and was therefore contraband does not change the result as to the admission of the evidence though that fact may have some bearing on the defendant's right to its return. Again, to quote Judge WHITE when he spoke of the property as contraband: "The discovery of evidence of the offense (contraband property) occurs in exactly the same way. The fact that the defendant had no right to the liquor, that it is already forfeited to the State as contraband, *does not affect the quality of the evidence.*" [State v. Owens, 302 Mo. l. c. 368, 259 S. W. 105.] This does not mean that the State may not in any and all events use knowledge which it subsequently obtains with reference to property seized under an illegal search warrant. The facts so found do not become "sacred and inaccessible." If the State gains the same knowledge or evidence from an independent source it may become admissible. [Silverthorne Lumber

Co. v. United States, supra; State v. Owens, supra.] Nor would the admission of illegally seized evidence constitute reversible error if the defendant himself admitted and testified to the evidence complained of or if there had been a lawful arrest. [State v. Park, 322 Mo. 69, 16 S. W. (2d) 30; State v. Rebasti, 306 Mo. 336, 267 S. W. 858.] It is our view, in the instant case, that the State was attempting through the evidence of Sergeant Viets, to do indirectly that which it could not do directly and thus invaded the appellant's constitutional security against unreasonable search and seizure. At least two jurisdictions have held that if the search and seizure is illegal at its inception the evidence is not rendered admissible by the procurement of a valid search warrant during the progress of the search. [People v. Alverson, 226 Mich. 342, 197 N. W. 538; Thomas v. State, 25 Okla. Cr. 409, 220 Pac. 976.]

The same reasoning applies to the sheriff's testimony with reference to Wilkerson's certificate of ownership. True ▮ enough, the same information could have been secured from some other source, but this certificate belonged to the appellant, it was in his automobile when it was illegally seized and, therefore, was not admissible in evidence against him. The defendant objected to its introduction in evidence as soon as he learned of its seizure. [Gouled v. United States, 255 U. S. 298, 65 L. Ed. 654, 41 Sup. Ct. 261.] The defendant's constitutional rights were not waived by his wife's consenting to the illegal seizure or by her delivery of the certificate to the officers under the circumstances related by the sheriff. [Amos v. United States, 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. 266; Fitter v. United States, 258 Fed. 567; Conner v. State (Ind.), 167 N. E. 545; Duncan v. Commonwealth, 198 Ky. 841, 250 S. W. 101; Carignano v. State, 31 Okla. Cr. 228, 238 Pac. 507; Rose v. State, 36 Okla. Cr. 333, 254 Pac. 509.]

McNally's evidence, however, stands on a different footing under this record. It does not appear that he participated in the unlawful search and seizure nor that he examined the automobile at the close of the first day's trial at the instigation of or request of the State. He testified:

"I am Special Agent for the Automobile Protective Information Bureau.

"Q. As such agent what is the nature of your work? A. Well, principally the examination and inspection of automobiles for peace officers. Sheriffs, Chiefs of Police and Federal Officers."

But he did not say that his present investigation was at the instance of the State, nor was there a showing that anything he did or testified to was in connection with the illegal search and seizure. [Copley v. Commonwealth, 219 Ky. 498, 293 S. W. 981; Byars v. United States. 273 U. S. 28, 71 L. Ed. 520, 47 Sup. Ct. 248.] The State and federal constitutional security against unlawful search and seizure

applies only to governmental action. It is a "restraint upon the activities of sovereign authority," real or assumed, and was never "intended to be a limitation upon other than governmental agencies." [Burdeau v. McDowell, 256 U. S. 465, 65 L. Ed. 1048, 41 Sup. Ct. 574; State v. Lock, supra; State v. Owens, supra.] From all that appears here McNally may have been acting on his own initiative, in which event his evidence would be admissible because the constitutional inhibition against unreasonable search and seizure is a restraint on the State and does not apply to unlawful search and seizure by an individual. [State v. Steely, 327 Mo. 16, 33 S. W. (2d) 938; Aldridge v. United States, 67 Fed. (2d) 956; 22 C. J. S., Sec. 657, p. 1024.]

Regardless of the defendant's guilt, we are of the opinion that he is entitled to a new trial because of the errors indicated. The judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.