# BROWN *v.* STATE OF INDIANA.

[No. 28,651.   Filed June 6, 1951.]

*Albert W. Ewbank,* of Indianapolis, for appellant.

*J. Emmett McManamon,* Attorney General, and *Frank E. Coughlin,* Deputy Attorney General, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict convicting appellant of burglary in the second degree and grand larceny as charged by indictment in two counts. The error assigned here is the overruling of appellant's motion for new trial.

From the evidence and reasonable inferences properly drawn therefrom, the jury was justified in finding that shortly before daylight on Sunday, the 24th day of July, 1949, appellant broke a skylight and through the same entered the building in the possession of Vernon Doyles at 905 Indiana Avenue, Indianapolis, which was used by him as a dry cleaning shop, and did steal therefrom a fountain pen and money belonging to said Doyles and removed therefrom clothes in the possession of said Doyles for the purpose of being dry cleaned. After appellant had been in the shop he went on Indiana Avenue near Blake Street, and em-

ployed the witness Gilbert Lee Hatcher who was operating an unlicensed taxicab, to drive him in an alley behind the cleaning shop where he stopped, and appellant then picked up the clothes from the shop, and directed Hatcher where to drive, until the cab was stopped at 13th and Yandes Streets on the left side of the street. Appellant got out of the automobile near a stairway. A lady was coming down the stairway, and appellant went around the house to avoid her, and the witness Hatcher then drove his car away, and stopped and reported the incident to two policemen in a police car. Hatcher, his automobile and its contents were taken to police headquarters. Appellant lost his billfold in the car, and one of the policemen recovered it, and then went to the home of appellant at 1311½ Columbia Avenue. In the hallway near appellant's door he had dropped the fountain pen belonging to Doyles, which was recovered by one of the policemen. Appellant identified the wallet as his, and stated his name was Leroy Brown. The policeman placed appellant under arrest for vagrancy, and then searched his home without a search warrant. After the search the police officer seized a light brown striped shirt with a zipper front, which was hanging in the closet, and $4.01 in change which was found in appellant's trousers pocket.

Appellant's counsel objected to the testimony concerning the search of appellant's home and the introduction of the shirt, pen and money in evidence. A preliminary hearing was had on the search in accordance with the procedure approved in *Shuck* v. *State* (1945), 223 Ind. 155, 59 N. E. 2d 124. The police officer stated he arrested appellant for vagrancy "immediately when I got to the apartment." He had no warrant for his arrest, and did not see him commit a misdemeanor, or a felony. He did not have any information that appellant "was over the age of fourteen, physically able

to perform manual labor and had not made reasonable effort to ·obtain employment," and he did· not "see or know he had refused to labor for compensation when labor was offered." He did not "find him or have any information that he was in a state of vagrancy or practicing common begging." The policeman knocked on appellant's door several times, and someone said, "Who is it?" To. this question he answered, "It is the police." After the door was opened appellant said he had been in bed since a little after midnight, that he hadn't done anything, and he didn't see why he should be arrested. He denied having the shirt, and objected to his arrest and the·search.

. There was no evidence that the appellant had not made reasonable effort to procure employment or that he had refused labor for compensation when work had been offered him. He was not practicing common begging. At common law, vagrancy consisted of going about from place to place, by a person without visible means of support, who was idle, and who, although able to work for· his maintenance, refused to do so, and lived without labor or.on the charity of others. 66 C. J. 399, § 1. The officer did not find appellant in a state of vagrancy.[1]

A peace officer has authority to arrest without a warrant for a misdemeanor committed in his presence. *Rucker* v. *State* (1948), 225 Ind. 636, 77 N. E. 2d 355. After a lawful arrest has been made, · a search of the person of the accused is proper.

---

[1] "Any person over the age of fourteen (14) years, and physically able to perform manual labor, who has not made reasonable effort to procure employment, or who has refused to labor for compensation. when labor is offered, who is found in a state of vagrancy or practicing common begging, shall, on conviction, be fined not less than five dollars ($5.00) nor more than fifty dollars ($50.00)." Section 10-4602, Burns' 1942 Replacement; Acts 1905, ch. 169, § 636, p. 584.

*Campbell* v. *State* (1926), 198 Ind. 231, 153 N. E. 397. But a peace officer has no authority to arrest for a misdemeanor on mere suspicion it has been or is being committed. *Hart* v. *State* (1924), 195 Ind. 384, 145 N. E. 492. An arrest which is unlawful to begin with is not made lawful by what the officer subsequently finds. *Burnett* v. *State* (1927), 199 Ind. 49, 155 N. E. 209. Nor is the search as an incident to an unlawful arrest made lawful by what the officer later discovers. *Morgan* v. *State* (1926), 197 Ind. 374, 151 N. E. 98; *Doncaster* v. *State* (1926), 197 Ind. 635, 151 N. E. 724. The arrest of appellant was unlawful in its inception, and any search pursuant thereto was unreasonable and in violation of his constitutional rights under § 11 of Article 1 of the Constitution of Indiana. It was error to admit testimony of the search and the introduction in evidence of the articles seized at appellant's home over his objections. See *Shuck* v. *State* (1945), 223 Ind. 155, 59 N. E. 2d 124, *supra.*

Appellant contends that there was a fatal variance between the evidence and the charge of burglary in the second degree. The first count of the indictment in part stated that "Said building and structure was not then and there a part of any dwelling, and was not a place of human habitation."[2] There was a watchman who was in the building and asleep at the time of the breaking and entering. He stated he had a home at 753 Indiana Avenue where he lived with his wife, that he night-watched the fire all

---

[2] The statute under which the first count of the indictment was drafted provides in part as follows:

"Whoever breaks and enters into . . . any building or structure other than a dwelling-house or place of human habitation, with intent to commit a felony therein, shall be guilty of burglary in the second degree . . ." Clause b, § 10-701, Burns' 1942 Replacement.

night, that he did sleep some on the job, but he was up every two hours, and he had a cot and slept with his clothes on, and that he did cook some coffee there. From this, the jury had the right to find that the cleaning shop was not his sleeping apartment, and was not his dwelling house or a place of human habitation. I McClain, *Criminal Law*, § 494, p. 473; *State* v. *Potts* (1876), 75 N. C. 129; *State* v. *Williams* (1884), 90 N. C. 724, 47 Am. St. Rep. 541.

Nor was there any variance between the allegations of the indictment and the proof as to ownership of the property involved. The jury could properly find that Doyles was the bailee of the clothes which were taken from his cleaning establishment. In *State* v. *Tillett* (1909), 173 Ind. 133, 89 N. E. 589, this court stated the law to be: "(1) That it is proper in a prosecution for larceny to describe the property as that of the real owner, or of the person in possession. (2) It may be alleged to be the property of one who is in possession as bailee, agent, trustee, executor or administrator. (3) Such bailee, agent, trustee, executor or administrator may be alleged to be the owner thereof by name, without describing his trust character, that is, the property may be described as his individually. (4) Evidence of possession is sufficient proof of ownership under such an allegation." (P. 135.) The allegations as to ownership in both counts of the indictment were proper, and there was no variance in the proof thereof as to either count.

Appellant's other contentions as to errors are without merit. Judgment reversed, with instructions to the trial court to sustain appellant's motion for a new trial.

NOTE.—Reported in 99 N. E. 2d 103.