DALTON *v.* STATE OF INDIANA.

[No. 28,754. Filed April 26, 1952. Rehearing denied May 27, 1952.]

*Paul R. Benson* and *Eugene H. Yergin,* both of New Castle, for appellant.

*J. Emmett McManamon,* Attorney General; *John Ready O'Connor* and *George W. Hand,* Deputy Attorneys General; and *Robert Brown,* Prosecuting Attorney of Henry County, for appellee.

EMMERT, J.—This is an appeal from a judgment on a verdict finding appellant guilty of leaving the scene

of an accident (§47-1910, Burns' 1940 Replacement), upon which he was sentenced to the Indiana State Prison for one year. Alleged errors occurring before filing of the motion for a new trial are embodied therein as permitted by Rule 2-6 as amended. It is not necessary to state a summary of evidence given on the trial, since our decision on the ruling of the trial court in over-ruling appellant's motion to suppress evidence obtained as a result of a search and seizure will decide appellant's contention that the verdict is not sustained by sufficient evidence, and is contrary to law, and makes it unnecessary to decide other errors concerning admissibility of the evidence on trial.

The night of October 25, 1949, Jack Logan, accompanied by five women, was driving a two door Chevrolet westward on State Road No. 38 from New Castle to Kennard to attend a revival. When he was a few miles west of New Castle he had a down tire, and stopped his car partially off the road about thirty yards west of the Sugar Grove School. It was about 7:15 o'clock, and dark. An automobile also proceeding westward had a collision with the Logan Chevrolet and struck Logan, knocking him in front of his automobile, and so injured him that he died the same night at about 8:30 o'clock in the hospital at New Castle. None of the women were able to identify the car which hit the deceased, nor was a driver of another car approaching from the west, who turned around and followed the car which hit Logan, able to overtake the fleeing car or identify it. A door handle was found behind the Logan car, and this was turned over to the officers who investigated the accident. The car which hit Logan was traveling at a high rate of speed and never stopped.

The evidence was that the broken handle found behind the Logan car could have been from a 1937, 1938

or 1939 Chevrolet, Pontiac or Oldsmobile. The next day the officers checked the ownership of 1937 Pontiacs and began a systematic search of all Pontiacs in the county to determine if the broken handle had come from any of them.

That night about 9:30 o'clock two carloads of officers went to the farm owned by appellant where his home was situated. Appellant was absent. They had no search warrant nor warrant for the arrest of appellant, nor did they have any probable cause for believing that he had committed the offense for which he was convicted. Some of the officers were in uniform and had guns. One of the state policemen knocked at the door of appellant's residence and made himself known. The officer stated in substance that there had been a fatal accident, and he would like to check Mrs. Dalton's 1937 Pontiac. She gave her consent, and the officers searched the car.

The right front fender had the light broken out and the light was very rusty. The right front fender had an old crumple near the headlight, and on the right was a new tear. They found one thread of cloth which was removed.[1] There was a brownish red substance on the fender.[2] There was a piece of tissue on the fender.[3] The right door handle of appellant's car was missing. There was no damage to the small ring which surrounded the door handle where the handle came off.

---

[1] The expert witness could not state that this thread came from the clothes of the decedent.

[2] This was never identified as blood of human origin.

[3] The state police technician gave it as his opinion this was of human origin, but Dr. Joseph Haymond, the pathologist of the Henry County Hospital, said he could not "identify it as animal or human tissue." The pathologist did say it was "common muscle which you ordinarily obtain as meat from the butcher shop . . ."

The officers obtained Mrs. Dalton's permission to remove the car, and a wrecker pulled it to police headquarters in New Castle. Mrs. Dalton testified that the appellant had paid for the car; that she has never driven a car; that for five years her husband used the car for farming operations with her knowledge, permission and consent, and that he had the control, possession and custody of it.

Section 11 of Article 1 of the Indiana Constitution is to receive a liberal construction for the protection of the people.[4] *Wallace* v. *State* (1927), 199 Ind. 317, 157 N. E. 657; *Flum* v. *State* (1923), 193 Ind. 585, 590, 141 N. E. 353; Cornelius, Search & Seizure (2d Ed.), §15, pp. 58, 59. "It is the duty of courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon." *Boyd* v. *United States* (1886), 116 U. S. 616, 635, 6 S. Ct. 524, 29 L. Ed. 746, 752.

An automobile is an "effect" within the constitutional protection. *Robinson* v. *State* (1925), 197 Ind. 144, 149 N. E. 891; *Pettit* v. *State* (1934), 207 Ind. 478, 481, 188 N. E. 784. It is not necessary to decide whether or not the appellant in fact owned the car. Although the certificate of title was in his wife's name, the undisputed evidence is it was in his custody, control and possession. The right of possession is of sufficient interest in the subject matter of a search to entitle appellant to the protection of the constitution. *Shepherd* v. *State* (1928), 200 Ind. 405,

---

[4] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Section 11, Article 1, Constitution of Indiana.

164 N. E. 276. If the search is illegal in its inception, it is not made legal by what is thereafter found as a result of the search. *Brown* v. *State* (1951), 229 Ind. 470, 99 N. E. 2d 103; *Morgan* v. *State* (1926), 197 Ind. 374, 151 N. E. 98; *Doncaster* v. *State* (1926), 197 Ind. 635, 151 N. E. 724; *United States* v. *Slusser* (1921), 270 Fed. 818, 819; Cornelius, Search & Seizure (2d Ed.) §31, p. 86.

The state takes the position that the wife of appellant was authorized to consent to the search, and hence waive appellant's constitutional immunity. There is no evidence in this record that appellant ever gave his wife any authority whatever to consent to any search of his premises, or the car which was in his possession near his home, and certainly the law should not imply any such consent from the mere fact that he was away and the wife was at home with the children. *United States* v. *Rykowski* (1920), 267 Fed. 866, 871; *Humes* v. *Taber* (1850), 1 R. I. 464; *State* v. *Wilkerson* (1942), 349 Mo. 205, 212, 159 S. W. 2d 794; Underhill, Criminal Evidence (4th Ed.), pp. 1456, 1457, §800; Cornelius, Search & Seizure (2d Ed.), §24, p. 71; *Maupin* v. *State* (1927), 38 Okla. Cr. 241, 260 Pac. 92.[5] The burden was on the state to show appellant had authorized his wife to consent to the search.

Hence, it was error for the court to overrule the motion to suppress the evidence and to admit the evidence over objection at the time of trial. Evidence obtained as a result of an unreasonable search and seizure in violation of the constitu-

[5] Often the consent of the wife to officers, who purport to act in their official capacity, has been held given under coercion. *Amos* v. *United States* (1921), 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654; *State* v. *Lindway* (1936), 131 Ohio St. 166, 2 N. E. 2d 490; *People* v. *Lind* (1938), 370 Ill. 131, 18 N. E. 2d 189.

tional prohibition, "whether it be the instruments used to commit the crime, or oral evidence of what was found or seen in such unlawful search—is incompetent against the accused, and a conviction based thereon ought to be reversed. *Boyd* v. *United States* (1885), 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746; *Weeks* v. *United States* (1913), 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B 834, Ann. Cas. 1915C 1177; *Silverthorne Lumber Co.* v. *United States* (1919), 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319." *Flum* v. *State* (1923), 193 Ind. 585, 590, 141 N. E. 353, *supra.* See also *Dearing* v. *State* (1948), 226 Ind. 273, 79 N. E. 2d 535.

It is unnecessary to discuss further alleged errors. Without the evidence illegally obtained there was nothing to connect the appellant with the charged offense. The evidence was insufficient to sustain the verdict and therefore it was contrary to law.

Judgment reversed, with instructions to sustain appellant's motion for a new trial, and to grant appellant's motion to suppress the evidence.

Draper, J., dissents with opinion in which Jasper, J., joins.

## DISSENTING OPINION

DRAPER, J.—No search of the appellant's premises was conducted. No property or "effect" of his was searched or seized. The automobile, which his wife owned, but which she permitted him to use, was examined and later taken away with her permission freely, knowingly and voluntarily given. There is no evidence whatever to the contrary. This case is entirely unlike such cases as *Amos* v. *United States* (1921), 255 U. S. 313, 41 S. Ct. 266, 65 L. Ed. 654, and *Dearing* v.

*State of Indiana* (1948), 226 Ind. 273, 79 N. E. 2d 535. Those cases involve elements of implied coercion not present here. I think the evidence disclosed by the examination of the car was clearly admissible.

It seems to me the court has today approved the proposition that if A runs over B with a car borrowed from C, the police cannot examine the car and testify concerning it no matter how willingly C surrenders it to them. If this is the law in Indiana, I think it should be changed.

Jasper, J., concurs.

NOTE.—Reported in 105 N. E. 2d 509.