STATE of Missouri, Respondent,

v.

Thomas Anderson BUNTON, Appellant.

No. 45174.

Supreme Court of Missouri.

Division No. 2.

June 11, 1956.

Ronald J. Fuller, Rolla, for appellant.

John M. Dalton, Atty Gen., J. Richard Roberts, Sp. Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Upon evidence sufficient to sustain the jury's finding of guilt, Thomas A. Bunton, a completely illiterate man now nearly sixty years of age, has been found guilty of molesting Bonnie Sue, a child five years old, and sentenced to three years' imprisonment. Section 563.160 RSMo 1949, V.A. M.S.

Upon this appeal the defendant contends, for several reasons, that he was deprived of a fair and impartial trial. The circumstances out of which one of the reasons arose may recur upon a retrial of the case, while the other circumstances could not recur, it is hoped, and for that reason alone the claim that the court prejudicially erred in admitting certain evidence respecting a written confession is considered.

On the day of his arrest, February 19, 1955, certain public officers took a written confession from the appellant which he signed by mark. On the day of the trial, before the jury was impaneled, the defendant followed the unusual procedure, 22 C.J.S., Criminal Law, § 838, p. 1470, of filing a motion which he denominated "Motion To Suppress Evidence." In the motion he alleged the fact of his arrest and custody and that the officers subjected him to "threats, force, duress and promise of leniency," and, in that manner, caused him "to sign his 'mark'" to a written confession. Among other things, he alleged that the state intended to introduce the confession in evidence and if permitted to do so "the rights of the defendant will be greatly prejudiced for the reason that said purported confession is involuntary. Wherefore, defendant respectfully prays the Court to order a preliminary hearing to determine the admissibility of said purported confession; and to suppress said purported confession as evidence in this cause."

The record then contains these recitals:

"(The following proceedings were had out of the presence and hearing of the prospective jurors for this trial:)

"The Court: As I understand it, this motion is directed at some instrument in writing,—

"Mr. Fuller: (defense counsel) Some instrument—

"The Court:—that one instrument, particular instrument is what you want to suppress?

"Mr. Fuller: Yes, sir.

"The Court: Where is it? Has anybody got it?

"Mr. Hutchison: (Prosecuting Attorney) I have it, Your Honor. (Handing paper to Court.)

"The Court: Well, I have read this over. *Let's talk about it informally. Off the record.* (Discussion off the record.)

"The Court: I think you should let your record show here the defendant, in person, is present, along with his counsel, *at this hearing, pre-trial hearing on the Motion to Suppress Evidence filed by the defendant, and out of the presence and hearing of the jury. Off the record.* (Discussion off the record.)

"The Court: '*Motion to suppress sustained insofar as purported—confession,* would you call it, or what do you call it?'

"Mr. Fuller: We call it 'purported written confession'.

"The Court:—*purported statement of defendant in typewritten form and purportedly bearing defendant's mark thereto is concerned. Let's see: 'Motion to suppress sustained insofar as purported statement of defendant in*

*typewritten form and purportedly bearing defendant's mark thereto is concerned.'"*

Thereafter the trial proceeded and, as indicated, the state adduced evidence, independently of the written confession, which tended to establish the appellant's guilt, including certain oral admissions to which there were no objections. These witnesses were Bonnie Sue's mother, a highway patrolman, the sheriff of Maries County and his deputy. Then the state called two witnesses, Mr. James and Mr. Eads, citizens who held no official position. They were present at Magistrate Hollenbeck's residence on February 19th at the request of the prosecuting attorney, one of them said, "he wanted a witness to this confession." The testimony of these two witnesses was of the same purport but the evidence objected to and the point urged upon this appeal plainly appear from the direct examination of Mr. Eads:

"Q. (Prosecuting Attorney) Will you tell the jury what statements were made, what I asked—A. *I heard a confession read.*

"Mr. Fuller: We wish at this time, Your Honor, to object to the evidence given—

"The Court: That is stricken out, about a confession. Did you hear the officers, any of them that were present there at that time and the defendant being present, did you hear them talk about this incident of molesting this little girl with the defendant, or did you hear him make any statement about that incident?

"Witness Mr. Eads: *No, I didn't.*

"The Court: Nothing about molesting a little girl was brought up during your talk?

"Witness Mr. Eads: *It was brought up in the statement that was there, that was read to me,* but they—

"Mr. Fuller: Your Honor, at this time we wish to object to the evidence given by this witness, for the reason that it is testimony pertaining to a written statement that has been suppressed by order of this Court, and the question has been asked by the Prosecuting Attorney solely for the purpose of prejudicing the rights of this defendant as to any written statement. We ask that a mistrial be declared, Your Honor.

"The Court: Overruled. Did you hear the defendant make any statements about this incident for which he is on trial here, molesting this little girl?

"Witness Mr. Eads: *Well, it was read to him there.*

"The Court: I said, did you hear the defendant make any statements?

"Witness Mr. Eads: *He said 'it was true'. That is all I know. That is all I know. He said 'it was true.'"*

It is obvious that the court was seeking to elicit some testimony corroborative of the voluntariness of the oral admissions but the witness plainly said, disassociated from the written confession, that he heard no such admissions. The defendant interposed no objection whatever to the oral admissions and there was no evidence that the oral admissions were involuntary. All the witness heard or knew about was that "I heard a confession read" which was also read to the appellant and "He said it was true." The written confession, having been suppressed or excluded because involuntary, was not offered or received in evidence. While the evidence upon which the confession was found to be involuntary is not in the record, it must be assumed that there was good and sufficient reason for the court's finding. And, although the written confession was found to be involuntary and excluded, these two witnesses, inferentially if not directly, testified to the confession and that which the court had ruled could not be done directly was done indirectly. State v. Wilkerson, 349 Mo. 205, 211, 159 S.W.2d 794, 798.

■ When first raised and questioned the burden was upon the state to prove the

"voluntariness" of the written confession, State v. Bradford, Mo., 262 S.W.2d 584, 586; State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88 and, according to the court's initial finding and ruling, the court found that the state had not sustained its burden and that the written confession was involuntary. In one of the Home Trust Company robbery-murder cases the court said, "But, these statements were offered and admitted in evidence as a part of the defendant's conversation with the prosecuting attorney on June 16th, when the defendant confirmed them as they were read to him. 'Where a confession has been obtained under circumstances rendering it involuntary and inadmissible, a presumption exists that any subsequent confession arose from a continuance of the prior influence, and this presumption must be overcome before the subsequent confession can be received in evidence. The controlling influence which produced the prior confession is presumed to continue until its cessation is affirmatively shown, and evidence to overcome or to rebut this presumption must be very clear, strong, and satisfactory; if there is any doubt on this point, the confession must be excluded.' 16 C.J. 722–723. * * * Under such circumstances, it must be presumed that the defendant's confession to the prosecuting attorney was involuntary, and, for that reason, it should have been excluded." State v. Nagle, 326 Mo. 661, 672-673, 32 S.W.2d 596, 601; State v. Brown, 73 Mo. 631; annotations 85 A.L.R. 942; 18 L.R.A.,N.S., 768, 857–868; 20 Am. Jur., Sec. 487, p. 424. If the testimony of these two witnesses had referred solely to the oral admissions and had tended to show that they were voluntary we would be confronted with another problem, but the voluntariness of a second confession is not in point of fact involved here. As indicated, the testimony of these two witnesses referred to and tended to prove the written confession which the court had declared to be involuntary and for reasons of greater force than those involving a second confession should have been excluded. The admission in evidence of an involuntary confession infringes the most elemental standards of a fair trial as well as due process.

State v. Bradford, supra; Malinski v. People of State of N. Y., 324 U.S. 401, 65 S. Ct. 781, 89 L.Ed. 1029. Because of the admission, in the unique circumstances of this record, of the evidence which tended to prove the previously excluded involuntary confession the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.