[Crim. No. 24391. Second Dist., Div. Four. July 25, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT ORLOSKY,. Defendant and Respondent.

**COUNSEL**

Joseph P. Busch, District Attorney, Harry B. Sondheim and Daniel L. Bershin, Deputy District Attorneys, for Plaintiff and Appellant.

Friedman, Sloan & Halvonik, Friedman & Sloan, Paul N. Halvonik and Paul G. Sloan for Defendant and Respondent.

**OPINION**

**KINGSLEY, J.**—The People appeal, pursuant to paragraph (7) of subdivision (a) of section 1238 of the Penal Code, from an order of dismissal made under section 1385 of the Penal Code after defendant's motion under section 1538.5 of that code to suppress certain evidence had been granted. The sole issue on this appeal is the correctness of the 1538.5 order. For the reasons hereinafter set forth, we conclude that the motion was improperly granted and that the dismissal resulting therefrom should be reversed.

In March of 1972 a valuable piece of electronic equipment, known as an oscilloscope, was found to be missing from a storeroom maintained by a telephone company in Los Angeles. Defendant had been employed by that company, at that location, prior to and after the oscilloscope was found to be missing; he left shortly thereafter for personal reasons. In Feb-

ruary 1973, defendant was involved in a shooting with police officers in Indiana, arising out of his resisting arrest for a crime not herein otherwise involved. After defendant had been transported to a hospital, a police officer went to a house where defendant's wife was staying with her grandmother, in order to tell the wife of the shooting. Mrs. Orlosky told the officer that defendant had "some guns" at his own grandmother's house, where defendant was staying. She accompanied the officer to that house and showed him the guns. She then told the officer "that there were a number of articles" in the apartment in Indianapolis where she had been living with defendant. Mrs. Orlosky accompanied the officer to that apartment, opened the door with her own key, and showed him a large quantity of articles that she told the officer "did not belong" to the Orloskys. Among them was an oscilloscope. The officer saw that the serial number on that instrument had been removed. He seized the instrument. Scientific investigation disclosed that it was the instrument missing from the telephone company's premises in Los Angeles.

The People concede in their brief that the record supports the conclusion that the Indiana officer was told, sometime prior to his entry into the Orlosky apartment, that the Orloskys had had an argument two nights earlier, that Mrs. Orlosky was spending nights with her grandmother and that they "were going to move out of the apartment."

Defendant was charged, in the Superior Court of Los Angeles County, with one count of grand theft of the oscilloscope and (alternatively) with one count of receiving it, knowing it to be stolen. He moved, under section 1538.5 of the Penal Code to suppress the instrument and any testimony as to the circumstances of its discovery. The motion was granted with the result above set forth.

## I

At the outset, we point out that we are concerned, on this appeal, only with the narrow issue of whether the oscilloscope and the testimony concerning its discovery may be introduced at defendant's trial. Whether the instrument was actually stolen, whether defendant was connected with its disappearance either as thief or receiver, and whether he knew of its presence in his Indiana apartment, are matters not before us and which must await defendant's trial if that event occurs. Clearly, the evidence sought to be suppressed would be relevant to the issues raised by the charges against him.

We point out, secondly, that the admissibility of the testimony turns on the validity of the police entry into the Indianapolis apartment. Once the

Indiana officer was in the apartment the oscilloscope was in plain sight. The casual looking at it and discovery of the removal of serial numbers was not a search;[1] once the condition of the article was seen, the officer had reasonable ground for regarding it as stolen property.

Thirdly, we are here concerned only with an issue of law. The trial court made it quite clear that it had no doubt of the credibility of the police officer who testified regarding the events in Indiana and that it accepted his version in determining the question of admissibility.

## II

The defendant contends that, under Indiana law, as set forth in *Dalton* v. *State* (1952) 230 Ind. 626 [105 N.E.2d 509, 31 A.L.R.2d 1071], the entry and examination were unlawful. *Dalton* holds that a wife cannot consent to a police entry into the family home without the express consent of her husband. For the purpose of this opinion, we assume that that is the law of Indiana.[2]

Had discovery taken place in California, the evidence would have been admissible. (*In re Lessard* (1965) 62 Cal.2d 497, 504 [42 Cal.Rptr. 583, 399 P.2d 39].) As in *Lessard,* the mere fact that the Orloskys had separated for two nights after a quarrel, and that they were planning to vacate the apartment, did not destroy the right of the officer to conclude that Mrs. Orlosky, possessing a key to the apartment, had sufficient control over the premises to have authority to invite them to enter and to examine the articles in question.

The People's brief elaborately discusses the question of whether the issue before us involves procedure or substance. We do not explore that interesting semanticism. The latest California cases have committed this state to the so-called "governmental interest" concept of conflict of laws[3] and we turn our attention to that approach.

---

[1]In addition, Mrs. Orlosky had given the officer permission to see and examine the articles in question.

[2]In their brief in this court, the People argue that *Dalton* was impliedly overruled by *Greer* v. *State* (1970) 253 Ind. 609 [255 N.E.2d 919]. We do not agree. In *Greer,* and in *Maxey* v. *State* (1969) 251 Ind. 645 [244 N.E.2d 650], the police were in hot pursuit and entered under circumstances not requiring consent from anyone. In *Lindsey* v. *State* (1965) 246 Ind. 431 [204 N.E.2d 357], consent was given by a person who not only was the owner but the possessor of premises as to which the defendant was, at best, a mere licensee; *Dalton* was expressly distinguished. Our research has not disclosed any other Indiana case involving the issue of a wife's consent and no case is cited to us that purports either expressly or otherwise to overrule *Dalton*.

[3]*Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666]; *Reich* v. *Purcell* (1967) 67 Cal.2d 551 [63 Cal.Rptr. 31, 432 P.2d 727].
As counsel pointed out in oral argument, both the California cases involved civil

Two theories have been suggested for the exclusionary rule. First, the concept of "dirty business"—i.e., that the state should not avail itself of illegal acts by its officers[4]—obviously would lead to admissibility of the evidence herein in issue, since California does not regard the police conduct as being improper. The second concept, i.e., is that of excluding evidence illegally obtained as a device to discipline the police, is less easy of application. Indiana can claim an interest in disciplining its own police officers by withholding from them success in prosecutions no matter where brought. On the other hand, California has an interest in proceeding effectively to prosecute for a major crime committed within its boundaries. On balance, we conclude that the California interest is entitled to superior recognition. This state should not be impeded, in a local prosecution for a local crime, by barring evidence which California law regards as legitimately procured under a doctrine that recognizes modern concepts of the husband-wife relation, merely to add a wrist slap to a foreign police officer whose personal interest in a California prosecution must be relatively remote. Indiana can control its own officers adequately by applying its rules on consent in Indiana prosecutions.

The order of dismissal is reversed; the case is remanded with directions to vacate the order granting defendant's motion under section 1538.5 of the Penal Code and to enter a new order denying that motion.

Jefferson, Acting P. J., and Dunn, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 19, 1974.

---

litigation, not criminal. However, we see no reason why the *approach* should differ, although the respective interests may be weighed differently in criminal, as against civil, cases.

[4]See *People* v. *Cahan* (1955) 44 Cal.2d 434, 445-447 [282 P.2d 905, 50 A.L.R.2d 513].