**DIAMOND MINING AND MANAGE-
MENT, INC., a presently defunct
corporation, et al., Plaintiffs,**

**v.**

**GLOBEX MINERALS, INC., et
al., Defendants.**

**No. C–74–0556–CBR.**

United States District Court,
N. D. California.

Sept. 27, 1976.

Belli, Ashe & Choulos, Melvin M. Belli, Kent A. Russell, San Francisco, Cal., for plaintiffs.

Lillick McHose & Charles, Graydon S. Staring, R. de Saint Phalle, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

RENFREW, District Judge.

Seeking damages for breach of contract and fraud, plaintiffs Diamond Mining and Management, Inc. ("Diamond"), and S. Richard Stern filed their Second Amended Complaint against defendants Globex Minerals, Inc. ("Globex"), Merritt Ruddock, and John Nisco with this Court on December 22, 1975. Defendants filed an Answer and Counterclaim on January 5, 1976, and a Motion to Dismiss the complaint on May 6, 1976. The motions were argued at a hearing before the Court held on June 17, 1976.

Now defunct, Diamond was incorporated under the laws of the Republic of Liberia and had its principal place of business in that republic. Stern, the corporation's former president, is a resident of the State of New York. Globex is a California corporation with its principal place of business in the City and County of San Francisco. Ruddock and Nisco, Globex officers, are citizens of the State of California and reside in the Northern District of California. Because this is a civil action between citizens of different states in which the amount in controversy exceeds $10,000, the Court has jurisdiction under 28 U.S.C. § 1332.

By agreement dated July 17, 1972, Diamond obtained from the Government of the Republic of Liberia (the "Government") a concession granting it the exclusive right to mine diamonds and other related minerals in a designated area of and near the Lofa River. Among the obligations which Diamond assumed under the concession agreement, it had agreed to deposit with the Government "a PERFORMANCE BOND with legally qualified sureties thereto or a claim letter of credit from an acceptable bank, amounting to Fifty Thousand ($50,-000) Dollars" to ensure the prompt and faithful commencement of prospecting operations. Diamond Mining Concession Agreement, dated July 17, 1972, Article XI.

Recognizing that it lacked the capital and mining experience to develop the concession properly, Diamond sought to enlist the partnership of the more affluent and experienced Globex in the mining venture. On October 12, 1972, Stern and Nisco, on behalf of Diamond and Globex respectively, entered into a written joint venture agreement which granted Globex in essence a fifty per cent interest in the net profits of the venture primarily in return for its promise to expend $200,000 to explore and develop the Lofa concession. Diamond-Globex Joint Venture Agreement, Clauses 2 and 3. At that time, Diamond warranted to Globex that its Concession Agreement with the Government was valid, that it had complied with all the terms and conditions of that agreement, and that it had expended at least $200,000 in procuring and operating the concession. Id., Clause 1.

Because, at the time that the parties executed the joint venture agreement, the Diamond concession had not yet been ratified by the Liberian legislature, and because Diamond's concession agreement required that it secure the written consent of the Government before transferring its rights or liabilities in the concession, the Diamond-Globex agreement was implicitly conditioned upon governmental approval. The parties agreed to use their best efforts to secure the requisite approval. Id., Clause 37. They further agreed that in the event that the concession was not approved, neither would "negotiate for any new or revised Concession covering all or part of the present Concession area * * * without

the participation of the other." *Id.*, Clause 40.

By letter of December 15, 1972, the Government rescinded the Diamond concession, claiming that Diamond had failed to post the performance bond required by its concession agreement. On December 23, 1972, the Government granted to Globex a concession to mine diamonds in the same area of the Lofa River which had previously been conceded to Diamond. After Diamond filed its March 13, 1973, protest of cancellation and request for arbitration under Article XXI of its concession agreement, and upon the request of Globex, the Government's Minister of Justice confirmed the validity of the Globex concession by letter dated March 20, 1973.

At that point, Diamond apparently chose not to pursue its remedies under Liberian law and instead filed a civil action against Globex, Ruddock and Nisco with this Court on March 8, 1974. Plaintiff's First Amended Complaint, filed on November 7, 1974, alleged breach of fiduciary duties, interference with contract, fraud and several claims of breach of contract. Each of these claims was alleged to have risen from Globex's purported complicity in the Government's revocation of the Diamond concession.

Defendants moved to dismiss the complaint on October 30, 1975, urging that the Government was an indispensable party to the suit, that a judgment on the merits would be barred by the Act of State doctrine, and that the Northern District of California was an inconvenient forum. In their Brief in Opposition to the Motion to Dismiss, filed November 18, 1975, plaintiffs stressed not Globex's alleged participation in the Government's rescission of the Diamond concession, but rather Globex's alleged breach of Clause 40 of the Diamond-Globex Joint Venture Agreement, a theory upon which they had not relied in their complaint. At a hearing held on December 4, 1975, the Court dismissed the action with leave to amend to develop the breach of contract claim.

The Second Amended Complaint sets forth two claims. The second claim for relief, a claim for fraud, is identical to the previously dismissed second claim of the First Amended Complaint. Because that claim has already been dismissed, it may not be reasserted and will not be considered here. The first claim sets forth plaintiffs' theory that defendants breached Clause 40 of the Diamond-Globex Joint Venture Agreement by reason of their independent procurement of the Lofa River mining concession.

Defendants advance three theories in support of their motion to dismiss. They contend that (1) because the contract claim poses the same *forum non conveniens,* indispensable party, and Act of State problems as did the previously dismissed claims, its assertion is barred by the Court's previous dismissal order; (2) the contract clause which plaintiffs seek to enforce is itself void; and (3) neither plaintiff has capacity to sue. For the reasons expressed below, the Court agrees that plaintiffs' claim for breach of contract should be dismissed.

Defendants' challenge to the capacity of the plaintiffs follows plaintiffs' recent admissions that, at some undesignated time subsequent to the events complained of in this action, Diamond was dissolved. The Second Amended Complaint asserts that plaintiff Stern sues both in his own right and as the appointed representative of the defunct corporation. Defendants question, first, whether the dissolved corporation retains the ability to sue under Liberian law, as required by Rule 17(b) of the Federal Rules of Civil Procedure, and second, whether plaintiff Stern actually has been appointed the corporation's representative for purposes of this suit. Plaintiffs have not cited any relevant Liberian law and have not filed with the Court an affidavit to support the assertion that Stern is the corporation's legal representative. In addition, defendants appear to argue that plaintiff Stern lacks standing to sue in his own right inasmuch as they claim that the Second Amended Complaint alleges only injury to the corporation.

The Court finds that, insofar as the Second Amended Complaint alleges that de-

fendants have converted and appropriated equipment personally owned by him, plaintiff Stern does assert a claim in his own right. Beyond that narrow finding, the Court finds it unnecessary to rule upon the capacity issue. A negative finding would not deprive this Court of subject matter jurisdiction over the controversy, *Summers v. Interstate Tractor and Equipment Co.,* 466 F.2d 42, 49–50 (9 Cir. 1972), and, even if the Court were to rule in plaintiffs' favor on the issue of standing, it would nonetheless find that the claim for breach of contract should be dismissed. For, assuming that Diamond retains a right to sue under Liberian law, and assuming that Stern is its legally appointed representative and has capacity to sue under California law, the Court believes that the breach of contract allegations fail to state a claim upon which relief can be granted.

Before proceeding to discuss the contract issue, the Court must address the incipient conflict of laws question, which this case presents. Negotiated in London and Toronto, and signed in Toronto, the joint venture agreement does not state the forum whose law the parties intended to govern their contract. Defendants have argued that, because Liberia is the state with the most significant relationship to the forum, the validity and interpretation of the contract depend upon Liberian law. Plaintiffs have not responded directly to the conflicts of law question but have continued to assume that California law is the appropriate legal reference. Neither party has advanced substantive Liberian contract or conflicts law.

In this diversity suit, the Court must look to the California law of conflicts to determine the law which governs this controversy. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Moore v. Greene,* 431 F.2d 584, 589–590 (9 Cir. 1970). Were the Court to assume, without deciding, that Liberian law ought govern the rights of the parties, it might quickly dispose of this question by resort to the long-standing California rule that, in the absence of a con-

trary showing, foreign law and California law are presumed to be identical. *See Enter v. Crutcher,* 159 Cal.App.2d Supp. 841, 844, 323 P.2d 586, 588 (1958); *Louknitsky v. Louknitsky,* 123 Cal.App.2d 406, 408, 266 P.2d 910, 911 (1954); *Christ v. Superior Court,* 211 Cal. 593, 598, 296 P. 612, 614 (1931).

Although this rule of law has not been expressly discredited by California courts, the recent evolution of the law of conflicts in the State of California suggests that state courts would today employ a different analytical method to resolve the conflicts question. Following Chief Justice Traynor's landmark decision in *Reich v. Purcell,* 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), when presented with a conflicts of law question, California courts engage in an "interest analysis" to determine whether to apply local law or that of the foreign forum. *E. g., Bernhard v. Harrah's Club,* 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976); *Hurtado v. Superior Court of Sacramento County,* 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974). Although it originated in this state in cases involving tort law, interest analysis is utilized by state courts in cases involving other areas of substantive law. *E. g., Dixon Mobile Homes, Inc. v. Walters,* 48 Cal.App.3d 964, 969–973, 122 Cal.Rptr. 202, 206–209 (1975) (contract); *People v. Orlosky,* 40 Cal.App.3d 935, 938–939, 115 Cal.Rptr. 598, 600–601 (1974) (evidence); *Buskuhl v. Family Life Insurance Co.,* 271 Cal.App.2d 514, 521, 76 Cal.Rptr. 602, 606–607 (1969) (contract, restraint of trade).

The California Supreme Court has succinctly summarized the procedural method of interest analysis:

" * * * generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply." *Hurtado v. Superior Court of Sacramento*

*County, supra,* 114 Cal.Rptr. at 110, 522 P.2d at 670.

The language of this case and the theory advanced by Professor Currie in "On the Displacement of the Forum," 58 *Colum.L. Rev.* 964 (1958), as reprinted in Currie, *Selected Essays on the Conflict of Laws* (1963), upon which the California Supreme Court relied heavily in reaching its decision, both suggest that the party who wants the advantage of a foreign rule of law bears the burden of pleading and establishing the content of the foreign law and the governmental policies advanced by such law. In the instant case, the parties have not advanced substantive Liberian contract law, nor suggested the interests of Liberia which might support its application to this controversy, nor suggested that California and Liberia have conflicting policies relevant to the issues involved in this controversy. In the absence of such a showing, the Court believes that California courts would apply the law of the forum.

Although the Court could locate no case in which a state court employed this latter method, and although both rules of law lead to the same result in this case, the Court believes that the emphasis upon a burden of persuasion, rather than upon a presumption, is more consonant with the tenor of the current California law of conflicts. The Court will, therefore, interpret the validity of the joint venture agreement according to California law.

Clause 40 of the Diamond-Globex Joint Venture Agreement states:

*"Mutual Assistance*

Any steps or actions taken by Globex with a view to expediting the enactment and confirmation of the concession agreement shall be conducted for the joint venture with Diamond, and *in the event the concession agreement is not confirmed, in whole or in part, Globex and Diamond each agree that they will not negotiate for any new or revised concession* covering all or part of the present concession area as described in Article I of the concession agreement *without the participation of the other."* (Emphasis added.)

Because, subsequent to the Government's revocation of the Diamond concession, Globex did obtain the Lofa River concession exclusive of Diamond, plaintiffs contend that defendants violated Clause 40 and seek general and special damages allegedly suffered as a result of the breach.

It is clear that the parties recognized the possibility that the concession might not be confirmed and attempted to devise a contract provision to protect their respective interests in the venture. Clause 40 purports to promise each party "participation" in negotiations for any similar Lofa River concession subsequently sought by the other. The parties agree that the clause was intended to assure that both corporations would be included in any revised concession which either might procure from the Government. Second Amended Complaint at ¶ II, p. 2; Deposition of John Nisco, August 20, 1974, at 84, lines 12–23, as cited in Plaintiffs' Brief in Opposition to Motion to Dismiss, filed May 17, 1976, at 2–3.

However, it is considerably less clear that Clause 40 is sufficiently definite to create an obligation enforceable at law. Neither Clause 40 nor any other provision of the agreement defines the term "participation"; the contract is silent as to the nature and amount of responsibility or benefit which Clause 40 was supposed to guarantee to each party. Common sense suggests that, because the parties are not prescient, they were unable to define with particularity the terms which a revised agreement might entail. It follows, therefore, that Clause 40 represents little more than the parties' averred intent to agree to a revised, mutually inclusive agreement when and if the basis for their preliminary plans was rejected. There is no dispute that, for whatever reasons, the parties failed to draft and effectuate such a revised agreement.

In invoking Clause 40 as the basis for a claim for damages, plaintiffs ask the Court to supply in its entirety an agreement which the parties themselves failed to make. California law does not empower its

judges so broadly. Recognizing that the responsibility for drafting contracts lies properly with the parties rather than with the courts, state law has long dictated that an agreement devoid of a material term, and thus indicating the need for future agreement between the parties, is void:

> "Where an agreement is not sufficiently definite to enable a court to give it an exact meaning or where an essential element is reserved for future agreement of both parties, a legal obligation cannot result." *Transamerica Equipment Leasing Corp. v. Union Bank,* 426 F.2d 273, 274 (9 Cir. 1970).

*See, e. g., Ablett v. Clauson,* 43 Cal.2d 280, 284–285, 272 P.2d 753, 756 (1954); *Autry v. Republic Productions,* 30 Cal.2d 144, 151, 180 P.2d 888, 893–895 (1947).

 Plaintiffs' assertion that "participation" means "a reasonable sharing in the proceeds of the diamond mining venture" cannot cure the defect of Clause 40. What might have been a reasonable division of function and profit in an agreement executed subsequent to the Government's revocation of the Diamond concession lay within the authority of the parties to determine and depended upon the circumstances that existed at that time. The relative bargaining position of the parties had changed substantially because Diamond had been criticized by the Government as having "failed to honour its [earlier] concession terms." Since Diamond no longer had any advantageous commercial relationship with the Government, it had very little, if anything, to contribute to a joint venture.

Although it is within the authority of the Court to establish a nonessential detail not settled by the parties, *Los Angeles v. Superior Court,* 51 Cal.2d 423, 433, 333 P.2d 745, 750 (1959), or to determine a reasonable rent not stipulated in a renewal option which settles all other essential terms, *Cha-ney v. Schneider,* 92 Cal.App.2d 88, 206 P.2d 669 (1949), courts do not, in the absence of any ascertainable standards, devise and impose upon litigants whole contracts. *See, e. g., Citizens Utilities Co. v. Wheeler,* 156 Cal.App.2d 423, 433, 319 P.2d 763, 769–770 (1956). Accordingly, the Court finds Clause 40 fatally uncertain and unenforceable.[1]

However, the Court does not believe that the Second Amended Complaint should be dismissed with prejudice in its entirety at this point. In addition to the claim for damages based upon the alleged breach of contract, plaintiffs assert that defendants have "converted and appropriated valuable mining equipment belonging to Mr. STERN as their own, without any fair or reasonable payment therefor." None of defendants' objections apply to this apparently simple property dispute between Mr. Stern and defendants. Therefore, the Court believes that plaintiffs should be given thirty days to amend their complaint and set forth greater detail with respect to this claim.

Accordingly, IT IS HEREBY ORDERED that plaintiffs' Second Amended Complaint and the claims for breach of contract and fraud are dismissed.

IT IS HEREBY FURTHER ORDERED that plaintiffs' claim for conversion is dismissed with leave to amend within thirty (30) days.

IT IS HEREBY FURTHER ORDERED that counsel for defendants shall promptly prepare an appropriate form of judgment, obtain approval of counsel for plaintiffs as to form, and submit it to the Court for execution.

---

1. Despite the parties' agreement on the intended meaning of Clause 40, the Court notes that the plain language of the provision promises only the opportunity to participate in negotiations, without any reference to participation in the proceeds or profits of the venture. While the Court defers to the parties' expressed understanding of the Clause for purposes of ruling on this motion, the ambiguity created by the variance between the provision's clear language and purported meaning further supports the Court's ruling that the Clause is fatally uncertain.