## No. 26761

## The People of the State of Colorado v. James R. Robinson

(556 P.2d 466)

Decided October 25, 1976. Opinion modified and as modified rehearing denied December 6, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, James Lee Miller, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This appeal was taken after the defendant, James R. Robinson, was convicted by a jury of first-degree murder and sentenced to life imprisonment. 1971 Perm. Supp., C.R.S. 1963, 40-3-102.[1] Three primary issues are raised on appeal. First, the admissibility of the defendant's statement to the police is asserted as a basis for reversal. Second, the defendant seeks a new trial on the ground that the jury was permitted to examine photographs of the deceased which were inflammatory. The third asserted basis for reversal is that the instruction to the jury on the element of premeditation was incomplete. We affirm.

## I.
## The Facts

On September 29, 1972, the owner of the Columbine Motel in Idaho Springs discovered the body of Monique Suzette LeDean in a room which she had rented. The prosecution established that the defendant was drinking with the deceased in the City Dump Bar on the afternoon of September 26, 1972. Other testimony linked the defendant with the deceased and established that the deceased was strangled with a shoelace that was taken from one of her boots.

Photographs showing the ligature marks on the throat of the decedent were introduced at the time of trial. Additional photographs in evidence

---

[1] Now section 18-3-102, C.R.S. 1973.

depicted other injuries inflicted prior to her death, including photographs taken during the autopsy of the decedent.

After the body was discovered, a warrant for the defendant's arrest was issued for unlawful flight to avoid prosecution. The warrant was not executed until January 11, 1973, when the defendant was arrested in St. Louis, Missouri, for common assault, assault with intent to kill, parole violation, and for being a fugitive from the State of Colorado. The defendant was given the *Miranda* warning. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A statement was then made by the defendant which included the admission that he had been in Georgetown for a period of three days in September of 1972.

Samples of hair from the defendant's head and pubic area were taken and were compared with those found at the time a postmortem examination was made of the deceased. Thereafter, investigators from the Jefferson County district attorney's office went to St. Louis and interviewed the defendant. The defendant gave a full statement which described the fight which he had with the deceased and the culmination of the dispute by strangulation. He admitted that he had become angered when he found money missing from his shoe and that he had tied the hands of the deceased behind her with a pillowcase and had then strangled her with one of the shoelaces which he had taken from her combat boots.

At the time the statement was taken, the defendant was handcuffed to a pipe in the jail. He had been in custody for seven days. He had not been taken before a magistrate, in accordance with the requirements of Crim. P. 5(a)(1), which provides:
"If a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district judge."

In addition to the confession, the prosecution offered expert witnesses to estabilsh the cause of death, the presence of hair samples that were the same type and kind as the defendant's on the body of the deceased, and other circumstantial evidence that tied the defendant to the crime.

II.

The Admissibility of the Defendant's Statement

■ While he does not dispute compliance with the *Miranda* standards, the defendant asserts that the failure of Missouri police officers to comply with the Colorado Rules of Criminal Procedure is grounds for reversal. This ignores the limited extraterritorial effect which the procedural rules of this jurisdiction can generally be given absent denial of constitutional rights.

■ The defendant was taken into custody in Missouri. A Missouri judge could not be expected to advise the defendant of the nature of the Colorado charges. Crim. P. 5(a)(2). Moreover, the Colorado officers did not arrive for seven days. The defendant does not contend that this delay

was other than the result of the practicalities of interstate travel. Upon arrival, the officers advised the defendant of his *Miranda* rights, which he waived. The record reflects no evidence of *"unnecessary* delays" by the Colorado officers. *See* 1 *C.Wright, Federal Practice and Procedure* § 74 (1969).

Finally, the defendant was repeatedly advised of his rights in accordance with the dictates of *Miranda*, and the confession was found to be voluntary. Therefore, even assuming, *arguendo*, a failure to comply with Crim. P. 5 under the circumstances of this case, no prejudice has been shown. *See People v. Hosier*, 186 Colo. 116, 525 P.2d 1161 (1974); *People v. Casey*, 185 Colo. 58, 521 P.2d 1250 (1974); *People v. Gilmer*, 182 Colo. 96, 511 P.2d 494 (1973); *People v. Wiedemer*, 180 Colo. 265, 504 P.2d 667 (1972). A proper *Jackson v. Denno* hearing was held. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). We find nothing in the record which suggests that the defendant was denied rights guaranteed to him by either the United States or Colorado Constitutions. Accordingly, no error was committed in the admission of the defendant's statement.

## III.
### The Instructions

■ The instructions, when read as a whole, adequately advised the jury that the defendant's conviction of first-degree murder must be predicated upon, *inter alia*, proof beyond a reasonable doubt of the element of premeditation.

The defendant contends that the jury was instructed that premeditation and deliberation may be inferred solely from the use of a deadly weapon. Needless to say, such an instruction would be error. In this case, however, the jury was instructed that premeditation and deliberation *may* be inferred from the use of a deadly weapon *if* justified from the evidence in the case. The jury was further instructed of the proper definitions of "premeditation" and "deliberation," and that the burden of the People to prove all the elements of the crime beyond a reasonable doubt was to be tested by the jury's satisfaction "from *all* the evidence in the case, whether it be direct or circumstantial." (Emphasis added.) Considering the instructions as a whole, *People v. Casey, supra*, it is clear that the jury was not left to infer the requisite *mens rea* solely from the use of a deadly weapon. The instructions, therefore, complied with the law. *See Lopez v. People*, 175 Colo. 503, 488 P.2d 892 (1971); *Hampton v. People*, 171 Colo. 153, 465 P.2d 394 (1970). *See also Power v. People*, 17 Colo. 178, 28 P. 1121 (1892).

Moreover, this case provides no basis for the proposition that the use of a deadly weapon was the only evidence of deliberation and premeditation. It is uncontroverted that the decedent's hands had been bound behind her and that her body exhibited the signs of a brutal beating prior to

death. *See People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974).

IV.

## The Admission of Photographs

■ The defendant contends that photographs which were made in the course of the autopsy were shocking and gruesome and should not have been admitted into evidence. Some of the photographs were not objected to at the time of trial, and the remaining photographs were admitted over the defendant's objection that they were irrelevant. Our review is, therefore, limited to the issue of the relevancy of the photographs. *See People v. Jones*, 184 Colo. 96, 518 P.2d 819 (1974).

■ The photographs in issue depicted different views of the victim's head, which was covered on one side with blood and had a swelling of the left upper eyelid. One of the photographs showed that the deceased's hands were tied behind her back. Others showed the swelling and hemorrhage that occurred prior to death. The photographs were admissible to illustrate and clarify the testimony of the pathologist as to the nature and causation of the decedent's wounds. *See People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974). The photographs in issue were relevant and admissible and were tied to facts which directly related to the circumstances surrounding the commission of the crime. *See People v. Hosier, supra*. This is not a case where the photographs serve "only to incite the jurors to passion, prejudice, vengeance, hatred, [and] disgust . . . ." *Compare Archina v. People*, 135 Colo. 8, 307 P.2d 1083 (1957). Given the testimony of the pathologist to which they related, the photographs were not sufficiently repetitive to warrant reversal on that basis alone. *See Hampton v. People, supra; Potts v. People*, 114 Colo. 253, 158 P.2d 739 (1945).

The remaining errors asserted by the defendant are without merit, and we, therefore, affirm.