OPINION OF THE COURT
Jasen, J.
The issue raised by this appeal, one of first impression in New York, is whether the use of a trained dog to indicate the presence of a controlled substance in a passenger’s luggage constitutes a search within the purview of the Fourth Amendment. We hold that it does not.
Defendant Leonard Price and his codefendant, Carl Parsons, arrived at the Los Angeles airport shortly after midnight, Los Angeles time, on January 12, 1979. Detective Kaiser of the Los Angeles Police Department, who was assigned to patrol the airport that evening, observed that both men were sweating profusely and appeared very nervous while purchasing their tickets and waiting for their flight to Buffalo. Although they had no previous reservations, they arrived within 10 minutes of the scheduled departure. Defendants paid cash for the tickets and *560 Detective Kaiser observed that they were carrying large sums of money.
Detective Kaiser, his suspicions having been raised by the defendants’ conduct, notified other officers who brought a specially trained dog, Frog, to the airline’s baggage area. Frog was trained to detect the presence of cocaine, heroin or marihuana; he was rated 100% effective by the Los Angeles police, having indicated the presence of drugs 705 times in 705 opportunities to do so.
Based on Detective Kaiser’s observations and Frog’s positive reaction indicating the presence of controlled substances in the defendants’ luggage, the Los Angeles police contacted a special agent of the Drug Enforcement Administration (DEA), who relayed the information, including information concerning Frog’s training and reliability, to the New York State Police. The State Police secured a search warrant which authorized the search of defendants and their luggage.
After allowing defendants to claim their baggage at the Buffalo airport, drug enforcement agents stopped the defendants. Pursuant to the search warrant, both defendants and their luggage were searched. A large amount of heroin was found in one of the suitcases, and the defendants were placed under arrest.
The defendant on this appeal, Leonard Price, was indicted and charged with criminal possession of a controlled substance in the first degree (Penal Law, § 220.21, subd 1; § 20.00) and criminally using drug paraphernalia in the second degree (Penal Law, § 220.50, subd 1; § 20.00). Subsequently, defendant brought an omnibus motion, pursuant to CPL 710.20, to vacate the search warrant and suppress the evidence. In pertinent part, that motion argued that the use of the dog by the Los Angeles police constituted a search that was unlawful because it was not authorized by a warrant. Therefore, the reaction of the dog, being the result of an illegal search, could not constitute probable cause justifying the issuance of a search warrant in New York.
Trial court denied the motion to suppress stating that: “A person’s right to expectations of privacy does not extend *561 to the atmosphere generally * * * His introduction of emanations into the same which may inculpate him in crime is at his own risk.” Defendants then entered a plea of guilty to a reduced charge of criminal possession of a controlled substance in the second degree. (Penal Law, §220.41.) On appeal, the Appellate Division affirmed the judgment against defendant, holding that the California police had not violated his Fourth Amendment rights by using the trained dog to establish probable cause. Hence, probable cause having been lawfully established, there was an appropriate basis upon which a search warrant could be obtained by the New York State Police. The order of the Appellate Division should be affirmed.
The right to be free from unreasonable searches and seizures protects people “from unreasonable governmental intrusion” “wherever an individual may harbor a reasonable ‘expectation of privacy’”. (Terry v Ohio, 392 US 1, 9, quoting Katz v United States, 389 US 347, 351, Justice Harlan concurring.) The Supreme Court has ruled subsequently that people who ship goods by rail in a closed and locked footlocker have such a “reasonable expectation of privacy”. (United States v Chadwick, 433 US 1.) Therefore, "it would be necessary to obtain a warrant, based on probable cause, before the footlocker could be searched.[1]
The principle of Chadwick clearly establishes that the defendant in this case had a reasonable expectation of privacy in the closed suitcases. The issue is not, as in Chadwick, whether a warrant was necessary for the police to open the suitcases,[2] but, rather, whether a warrant was required to allow the dog to sniff the air surrounding the luggage in order to determine whether contraband was being carried in the luggage. Since the dog does nothing more than smell the air surrounding the luggage in order to detect odors emanating from that luggage, there was no intrusion or search of the luggage. Defendant must assert a *562 reasonable expectation that the air surrounding his luggage and the odor apparent in that surrounding air will remain private. In such circumstances, the Fourth Amendment affords no protection.
Such an expectation of privacy is not supported by simple logic, analogous precedent or by the conduct of others similarly situated to the defendants. It is logically simplistic that once one releases something into the open air, there can be little reasonable expectation of asserting one’s claims of privacy in either the item itself or in the surrounding air. (United States v Goldstein, 635 F2d 356, cert den 452 US 962; United States v Solis, 536 F2d 880.) Just as there is no reasonable expectation of privacy in items left in the plain view of an officer lawfully in the position from which he observes the item (see, e.g., Harris v United States, 390 US 234), there can be no reasonable expectation that plainly noticeable odors will remain private. Those Federal cases that have already considered whether the use of a dog trained to sniff out controlled substances interferes with defendant’s reasonable expectations of privacy have similarly concluded that there is no reasonable expectation of privacy in the air surrounding one’s possessions. (See, e.g., United States v Fulero, 498 F2d 748; United States v Venema, 563 F2d 1003; United States v Bronstein, 521 F2d 459, cert den 424 US 918; United States v Solis, 536 F2d 880, supra.) Furthermore, the common use of mothballs and talcum powder by drug traffickers to cover such odors (see, e.g., United States v Fulero, 498 F2d 748, supra; United States v Solis, 536 F2d 880, supra; United States v Goldstein, 635 F2d 356, supra) indicates that there is no such expectation of either confining the odors or of privacy in the odors emanating from one’s luggage.
The only potentially distinguishing factor, in this type of case, is the necessity for the police to depend on the aid of the dog, Frog, the “canine cannabis connoisseur”. (United States v Bronstein, 521 F2d 459, supra.) As the Appellate Division noted, a dog’s superior senses have long been used to aid mankind in a variety of contexts. Not the least of these has been the use of dogs to track by scent escaped criminals or lost persons and articles. (1 Wigmore, Evi *563 dence [3d ed], § 177, subd [2].) There is little conceptual difference between the use of the dog to track the criminal himself and a similar use of the dog to detect contraband which the criminal unlawfully possesses. (United States v Johnson, 660 F2d 21.) Under the circumstances of this case, the use of the dog, Frog, was justified.
In a somewhat similar situation, this court has held that use of a flashlight is not unreasonable even though it makes it possible for a police officer to make observations that would normally be foreclosed by the darkness. (People v Cruz, 34 NY2d 362, 370; People v Sullivan, 29 NY2d 69.)[3] Similarly, the use of searchlights and binoculars to enhance an officer’s normal vision has been sanctioned. (United States v Lee, 274 US 559; United States v Minton, 488 F2d 37.)
What expectations of privacy defendants might otherwise have asserted were reduced by the fact that they surrendered their luggage to a common carrier which also has a responsibility for assuring the safety of its passengers by monitoring what is shipped on the airplanes. (United States v Bronstein, 521 F2d 459, supra.) It is common knowledge that all airline passengers and their luggage are subject to being searched and that these searches, although devised to protect against hijackings, are reasonable even when contraband is discovered in areas where a person would normally have a reasonable expectation of privacy. (People v Kuhn, 33 NY2d 203; United States v Bronstein, 521 F2d 459, supra; United States v Goldstein, 635 F2d 356, supra.) Although this is not the usual case challenging the use of a magnetometer or X ray at the airport, there is no contention raised that either the Los Angeles police, who were charged with patrolling the airport, or their dog, were not authorized to enter the baggage area.
Thus, since the use of the dog to indicate the presence of a controlled substance did not violate the defendant’s Fourth Amendment rights, the police conducted them *564 selves in an exemplary manner by then seeking a warrant authorizing a search of the defendants’ luggage. (United States v Chadwick, 433 US 1, supra.) On the facts of this case, there was probable cause to issue the search warrant. The officers had observed the defendants’ furtive behavior and saw that they were carrying large amounts of cash. These observations, attested to in the supporting affidavit, combined with their report of the dog’s reaction and training, supported a finding of probable cause.
It is also the contention of the defendant that the use of a dog to indicate the presence of a controlled substance in the defendants’ luggage violated California law and that the law of the situs is controlling in this case. The use of a trained dog by the Los Angeles police to establish, in part, the probable cause upon which a search warrant is issued in New York does not involve a conflicts-of-law question. Instead, it is a question of whether or not the use of the dog is proscribed by either Federal or New York law, constitutional or statutory. Since we hold that there is no violation of defendant’s rights under either Federal or State law, there is no reason to suppress the evidence found in the search conducted pursuant to the warrant validly issued in New York.
Finally, we address defendant’s contention that Frog must be produced for examination and testing pursuant to CPL 240.20. There is no validity to defendant’s argument where he has failed to present any evidence to rebut the People’s documentary proof of the dog’s ability to detect in every instance the presence of controlled substances. Had he come forward with any indication of questionable reli-. ability, it would have been within the trial court’s discretion to grant the requested discovery. As in the case of an informer, where the denial of direct discovery of the informer does not deprive the defendant of a fair trial as long as there was verification or corroboration (People v Cerrato, 24 NY2d 1, cert den 397 US 940), in this case, the corroboration of the Los Angeles police that Frog was trained in detecting the presence of controlled substances and was rated 100% effective is adequate to satisfy the requirement of reliability in protecting defendant’s rights.
*565 For all these reasons, the order of the Appellate Division should be affirmed.

. In Chadwick, the police had been alerted that the defendants were possibly shipping drugs. The facts indicate that the police used a trained dog to confirm their suspicions that drugs were in the footlocker. In deciding that the police were required to obtain a search warrant before opening the footlocker, the Supreme Court did not address the implications of the dog’s sniff as a basis for establishing probable cause.

. The police in Buffalo had secured a warrant before opening and searching the suitcases.

. We are not unmindful of our holding in People v Smith (42 NY2d 961) that the use of a flashlight constituted an unwarranted intrusion. The holding in that case, however, was based on the fact that the initial stop by the police of the defendant’s car was unreasonable. There was no analogous stop in this case.