PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Larry Ray PORTER, Defendant-Appellee.

No. 86SA445.

Supreme Court of Colorado, En Banc.

Sept. 14, 1987.

Douglass F. Primavera, Dist. Atty., Alamosa, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Bruce Boreson, Deputy State Public Defender, Alamosa, for defendant-appellee.

ROVIRA, Justice.

Prior to the trial of Larry Porter, the defendant, his confession was suppressed by the trial court. The basis for the suppression order was that the federal agents interrogating the defendant violated Fed.R. Crim.P. 5. In this interlocutory appeal, pursuant to C.A.R. 4.1, the People challenge the district court's order. We reverse.

## I.

On June 4, 1986, the Federal Bureau of Investigation (FBI) in Austin, Texas, was alerted by the Colorado office of the FBI regarding a kidnapping and extortion attempt. Telephone calls demanding ransom for Kenneth Dabney of Creede, Colorado, had been received by his aunt and uncle in Creede and had been traced to Austin. One call ordered the aunt to go to a motel in Austin by 10:00 p.m. on the evening of June 4, with $324,000 in ransom money.

Dabney's aunt did not go to Austin. Instead, by an arrangement between the motel and the FBI, calls asking for the aunt were put on hold and traced. After three failed attempts, the call was successfully traced to a public telephone in Austin. An FBI agent on stakeout in the area near the telephone was alerted by radio, and he approached the telephone. He observed the defendant at the public telephone, and was informed by radio that the connection was broken at the same time he saw the defendant hang up. The agent attempted to follow the defendant to ascertain the whereabouts of the victim, but the surveillance was compromised and the defendant was arrested at approximately 10:30 p.m. At the scene, he was twice advised of his *Miranda* rights; he refused to sign the tendered *Miranda* waiver form, stating "I think I'll wait."

The defendant was taken to the FBI office in Austin, arriving there about 11:00 p.m. He was again advised of his *Miranda* rights and agreed to talk to FBI agents. He signed the written *Miranda* waiver form.

The defendant stated that he and Kenneth Dabney conspired together to deceive Dabney's aunt into paying the ransom, but that he did not know where Dabney was and had no way to get in touch with him. The FBI agents did not believe, with more than $300,000 in ransom demanded, the two co-conspirators would have no way to reestablish contact. Accordingly, the agents doubted the defendant's story and were still concerned with Dabney's safety.

At approximately 12:30 a.m. on June 5, 1986, the defendant was asked to take a polygraph test to confirm his story and verify that Dabney was not in danger. He agreed. The nearest polygrapher was 100 hundred miles away in San Antonio, so the defendant was placed in the county jail until the examiner arrived later that morning.

The defendant was picked up at about 8:30 a.m. and taken to the FBI office. The polygrapher arrived at about 10:00 a.m., and the examination began at 10:30 a.m. Prior to the examination, the defendant was again advised of his *Miranda* rights and given the questions he would be asked.

The test, a major focus of which was the whereabouts of the victim, was then given, the results analyzed, and the defendant informed that the tests indicated he had not been truthful.

The defendant thereupon confessed, stating he had killed Dabney while attempting to kidnap him and that he had concealed the body in Colorado. The confession was reduced to writing. The defendant read it, made some corrections which he initialed, initialed each page, and then signed the last page about 3:30 p.m. He was then taken before a federal magistrate, where he was advised of his rights pursuant to Rule 5 of the Federal Rules of Criminal Procedure.

The defendant was subsequently charged in Colorado with murder, kidnapping, extortion, and a crime of violence. The defendant moved to suppress his statements and confession on numerous grounds, including violation of his right against self-incrimination under the Colorado and United States Constitutions and violation of Rule 5 of the Colorado and Federal Rules of Criminal Procedure. The trial court found that the FBI agents fully advised the defendant of his *Miranda* rights on at least four occasions before his confession was obtained, and that all of the defendant's statements were made after a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Further, that under the totality of the circumstances, the statements were knowingly, intelligently, and voluntarily made.[1] Accordingly, none of the defendant's constitutional rights were violated.

The court found, however, that the defendant was not taken before a magistrate as soon as possible. Instead, because of

the FBI agents' concern for the victim's safety, they delayed until the polygraph examination could be performed. The court found this was "unnecessary delay" under Fed.R.Crim.P. 5,[2] which the court held applicable because the defendant was under federal custody for federal charges.

Based on this analysis, the trial court suppressed all statements made during the polygraph test and afterward, including the written confession. The People appeal, arguing that state, not federal, law applies and that Colo.Crim.P. 5[3] was not violated. In the alternative, the People argue that the trial court misapplied the federal law and the confession did not violate Fed.R. Crim.P. 5.

## II.

### A.

■ As a threshold issue, we agree with the trial court and the defendant that Colo. Crim.P. 5 does not apply. *People v. Robinson,* 192 Colo. 48, 556 P.2d 466 (1976), is dispositive of this issue. There, the defendant was arrested in Missouri for violations of both Missouri law and for being a fugitive from Colorado. He was held without advisement by a magistrate for a week, at which time he confessed. In his prosecution in Colorado, he argued that since Colo.Crim.P. 5 was clearly violated, his confession must be suppressed. We disagreed, observing that his argument "ignores the limited extraterritorial effect which the procedural rules of this jurisdiction can generally be given absent denial of constitutional rights.... A Missouri judge could not be expected to advise the defendant [pursuant to Colo.Crim.P. 5]."

---

1. No issue has been raised, and therefore we do not consider, whether the delayed presentment in Texas may be considered by the trial court in determining whether any custodial statement made by the accused during the period of unnecessary delay satisfied the constitutional standard of voluntariness.

2. Federal Rule of Criminal Procedure 5(a) provides:

   An officer making an arrest under a warrant ... or any person making an arrest without a warrant shall take the arrested person without

unnecessary delay before the nearest available federal magistrate.... [who shall] proceed in accordance with the applicable subdivisions of this title.

3. Colorado Rule of Criminal Procedure 5(a) provides:

   If a peace officer or any other person makes an arrest, whether with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district judge.

The same reasoning applies here. The defendant was arrested in Texas by federal agents. Federal officers in Texas cannot be expected to know of the Colorado rules of procedure. At the stage of the proceeding where the defendant confessed, Colo. Crim.P. 5 was simply inapplicable, and the Federal Rules of Criminal Procedure controlled. *See* Corr, *Criminal Procedure and the Conflict of Laws*, 73 *Geo. L.J.* 1217, 1234 (suggesting law of jurisdiction where police activity took place controls in interstate criminal procedure matters).

### B.

The People argue that the trial court incorrectly applied the federal law and that a delay necessary to safeguard an innocent victim is not "unnecessary." The defendant responds that the trial court correctly ruled that the FBI agents violated Fed.R. Crim.P. 5. Both parties apparently assume that if the applicable federal rule was violated the confession must be suppressed. We disagree with that assumption and, accordingly, need not decide whether or not the federal rule was violated.

█ The situation presented by this case—whether evidence obtained by nonconstitutional violation in another jurisdiction is to be admitted in a criminal proceeding in the forum jurisdiction—is rare but not unknown. Some courts have applied a conflicts of law analysis in resolving this issue. *E.g., People v. Saiken*, 49 Ill.2d 504, 275 N.E.2d 381 (1971), *cert. denied*, 405 U.S. 1066, 92 S.Ct. 1499, 31 L.Ed.2d 796 (1972); *Burge v. State*, 443 S.W.2d 720 (Tex.Crim.App.), *cert. denied*, 396 U.S. 934, 90 S.Ct. 277, 24 L.Ed.2d 233 (1969). These courts analyze the issue as if it were a civil case and apply the choice of law method of the forum state to determine whether the law of the forum state or the situs state should be followed, and what sanctions are to be used if the appropriate law is violated.

However, this approach has been criticized. Both courts and commentators have concluded that it is preferable to use an exclusionary rule analysis rather than the traditional conflicts of law approach to determine the admissibility of evidence in the forum state which is obtained in another jurisdiction. *Pooley v. State*, 705 P.2d 1293, 1303 (Alaska App.1985); *People v. Blair*, 25 Cal.3d 640, 159 Cal.Rptr. 818, 602 P.2d 738, 748 (1979); *State v. Lucas*, 372 N.W.2d 731 (Minn.1985); W. LaFave, *Search and Seizure* § 1.5(c) at 116–117 (1987) (suggesting the correct inquiry is "whether the [forum] courts should attempt to deter [situs] police...."); W. Theis, *Choice of Law and the Administration of the Exclusionary Rule in Criminal Cases*, 44 *Tenn.L.Rev.* 1043, 1064 (1977) (states must determine whether to apply the exclusionary rule for statutory violations of federal law); R. Tullis & L. Ludlow, *Admissibility of Evidence Seized in Another Jurisdiction: Choice of Law and the Exclusionary Rule*, 10 *U.S.F.L. Rev.* 67, 88 (1975) (indicating that exclusionary rule analysis is preferable to choice of law analysis). The exclusionary rule analysis is more appropriate even if the action violated the laws of both jurisdictions. *See* W. LaFave, *Search and Seizure* § 1.5(c) at 116–117 (1987). We agree that, in determining whether evidence obtained in violation of the statutes or rules of criminal procedure of another jurisdiction should be suppressed, an exclusionary rule analysis should be followed.

This analysis is consistent with our decision in *People v. Robinson*, 192 Colo. 48, 556 P.2d 466 (1976). In *Robinson*, the defendant was arrested in Missouri for Missouri crimes, as well as being a fugitive from Colorado. He was held seven days without presentment to a magistrate, at which time he was interviewed by officers from Colorado and confessed. On appeal, he argued that his detention violated both Colo.Crim.P. 5 and Mo.R.Crim.P. 21.11, which provided that a defendant must be advised of his rights by a magistrate "as soon as practicable," and that his confession should accordingly be suppressed.

We affirmed his conviction. As noted in part II.A. of this opinion, we held that Colo.Crim.P. 5 did not apply. We did not make explicit reference to his claim that the Missouri rule was also violated, con-

cluding that the remainder of defendant's contentions were "without merit." In his petition for rehearing, the defendant argued that this meant that his arrest in another jurisdiction "depriv[ed] him of basic rights afforded to criminals in *both* jurisdictions." (Emphasis in original.) Although the opinion was modified after considering the rehearing petition, the defendant's other claims were still dismissed as being "without merit." Since the defendant was unquestionably correct that the Missouri rule was also violated, the clear implication of our holding was that the violation of a rule of criminal procedure in another jurisdiction did not require suppression.

## C.

■ In *People v. Ressin,* 620 P.2d 717 (1980), we adopted the analysis utilized in *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), in determining whether to extend the exclusionary rule to probation revocation proceedings. The *Calandra* analysis involves a balancing of the benefit of the exclusionary rule (prime purpose is deterrence of police misconduct) against the costs to society (suppression of probative evidence). We concluded that the per se extension of the rule to such proceedings would furnish little deterrence to law enforcement officers and any incidental benefits wrought by such an approach would be outweighed by the detrimental effect upon society's interest in the supervision and rehabilitation of probationers.[4]

This analysis has resulted, in several contexts, in a determination that the deterrent value of excluding evidence is too minimal to justify the cost to society of excluding probative evidence. *Immigration and Naturalization Service v. Lopez-Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (exclusionary rule inapplicable to deportation proceedings); *United States v. Havens,* 446 U.S. 620, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980) (exclusionary rule not applied to evidence used at trial to impeach credibility); *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (exclusionary rule not extended to civil proceedings commenced against a defendant by a different sovereign); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (exclusionary rule inapplicable to grand jury proceedings); *People v. Wolf,* 635 P.2d 213 (Colo. 1981) (exclusionary rule inapplicable for statutory violation; however, where police act in willful disobedience of law, court may use supervisory power to suppress evidence).

In cases such as this one, the officers involved were investigating crimes of another jurisdiction in that other jurisdiction. Those officers had taken an oath to uphold the laws of that jurisdiction. If they fail to follow the laws of that jurisdiction, they run the risk that evidence obtained will be excluded in the cases they investigate. If that is not enough to deter them from misconduct, it does not seem likely that the slight increment in deterrence achieved by suppressing the evidence in another jurisdiction will have any effect. *See Calandra* (if threat of inadmissibility at trial not enough to deter officers, added increment of inadmissibility in grand jury proceedings will make no difference, therefore, exclusionary rule inapplicable to those proceedings); *People v. Orlosky,* 40 Cal.App.3d 935, 115 Cal.Rptr. 598 (1974) (California court will not exclude evidence obtained by statutory misconduct in Indiana "merely to add a wrist slap to a foreign police officer, whose interest in a California prosecution must be relatively remote"); W. LaFave & J. Israel, *Criminal Procedure* § 3.1(e) at 87 (1985) (when violation not of fourth amendment dimension, "courts do not utilize the exclusionary rule in such circumstances, and rightly so; the prospect of deterrence is remote ... and there has been no profit from the wrongdoing attrib-

---

4. In *Ressin,* 620 P.2d at 721, we held that although the exclusionary rule is generally inapplicable to probation revocation proceedings, it might be applicable if police engage in gross official misconduct. Here, the officers delayed only long enough to verify defendant's story for the purpose of safeguarding innocent victims. This does not rise to the level of gross misconduct.

utable to the prosecuting jurisdiction."). Also, there would be little deterrent effect on federal law enforcement personnel since under precedent that is controlling in the United States Court of Appeals for the Fifth Circuit, which includes Texas, the confession would appear to be admissible in federal court even if the FBI agents failed to comply with Fed.R.Crim.P. 5(a). *O'Neal v. United States*, 411 F.2d 131, 136–37 (5th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 72, 24 L.Ed.2d 66 (1969).[5]

In *People v. Blair*, 25 Cal.3d 640, 159 Cal.Rptr. 818, 602 P.2d 738 (1979), the California Supreme Court considered the deterrent effect of excluding evidence obtained by federal agents in Pennsylvania which, although seized legally under both federal and Pennsylvania law, would have been regarded as being obtained in violation of the California Constitution if obtained in California.

> [The goal of deterrence] would obviously not be served by exclusion of the evidence in question, for no California law enforcement personnel participated in the seizure of the records from the telephone company in Philadelphia, and since the seizure was not illegal where it occurred, exclusion would serve no deterrent effect in either jurisdiction.[6]

On the other hand, the cost to society of suppressing the statements in this case will be quite high. The defendant's confession is likely to have significant probative value in determining whether or not he committed the crimes with which he is charged.

Our employment of an exclusionary rule analysis in resolving this case is not contrary to *People v. Heintze*, 200 Colo. 248, 614 P.2d 367 (1980). In *Heintze*, we were concerned with a violation of Crim.P. 5 by Colorado police officers in Colorado. We concluded that compliance with the *Miranda* requirements is not a substitute for the speedy presentment mandated by Crim.P. 5(a), and suppression of a confession due to an unnecessary delay in presentment proceeds from the supervisory power of this court to enforce its own rules of procedure relating to the administration of justice in Colorado courts.

In this case, however, the benefits of the exclusionary rule do not outweigh the cost to society of suppression. Suppressing the confession would have no effect on FBI officers investigating a federal crime in Texas, but would greatly affect the jury's ability to determine the defendant's guilt in this matter.

The order of the trial court is reversed.

ERICKSON, J., specially concurs in the result.

VOLLACK, J., joins in the special concurrence.

---

**5.** Under Fifth Circuit precedent, which would have guided the actions of the FBI agents in Texas, *see* Corr, *Criminal Procedure and the Conflict of Laws*, 73 Geo.L.J. 1217, 1234 (1985) (suggesting that in interstate criminal procedure cases the law of the jurisdiction in which the police activity took place should be applied), a defendant who has validly waived his *Miranda* rights cannot show prejudice from an untimely advisement under Fed.R.Crim.P. 5. In *O'Neal v. United States*, 411 F.2d 131, 136–37 (5th Cir.), *cert. denied*, 396 U.S. 827, 90 S.Ct. 72, 24 L.Ed.2d 66 (1969), the defendant was arrested about noon, advised of his *Miranda* rights, and made incriminating statements before being taken to a magistrate the next morning. He argued that he would not have made the statements if he had been promptly taken before an officer as required by Crim.P. 5, and therefore his statements were inadmissible under *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). Noting that *Mallory* was decided before *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.

1602, 16 L.Ed.2d 694 (1966), the court stated, "Knowing [his *Miranda* rights], he chose to speak. How, then, can *Mallory* aid him? His detention before seeing the Commissioner, though delayed, caused him no harm."

We have reached a result contrary to *O'Neal* in applying Crim.P. 5(a). In *People v. Heintze*, 200 Colo. 248, 614 P.2d 367, 371 (1980), we stated that the purpose of Crim.P. 5 "is to furnish a prophylaxis against abuses in the detention process and, more importantly, to place the accused in early contact with a judicial officer so that the right to counsel may not only be clearly explained, but also be implemented upon the accused's request."

**6.** In *Blair*, 602 P.2d at 748, the court also held that the goal of judicial integrity was not compromised by admitting the evidence in question since the search was legal where it occurred and, thus, the government is not profiting from illegal conduct.

ERICKSON, Justice, specially concurring in the result:

I agree with the majority's result and the conclusion that suppression of the defendant's confession is unwarranted. I write separately because I disagree with the majority's approach, which requires balancing on a case-by-case basis to determine the applicability of the exclusionary rule. Since the defendant's confession was not obtained in violation of the United States or Colorado Constitutions, it is unnecessary for us to employ a judicial balancing test to decide this case and to further confuse the law relating to the exclusionary rule.

The district court correctly held that the defendant was properly advised of his *Miranda* rights and that he voluntarily confessed after an effective waiver of these rights. Since Colorado Crim.P. 5 does not apply, *People v. Robinson*, 192 Colo. 48, 556 P.2d 466 (1976), the acts of the FBI agents are governed by Fed.R.Crim.P. 5(a). This rule, however, is not of constitutional dimension. *Van Ermen v. Burke*, 398 F.2d 329, 331 (7th Cir.), *cert. denied*, 393 U.S. 1004, 89 S.Ct. 494, 21 L.Ed.2d 468 (1968); *Barnett v. United States*, 384 F.2d 848, 856 (5th Cir.1967). There is also no constitutional requirement that evidence obtained in another jurisdiction be suppressed simply because the process of acquisition offended some local law. *Burge v. Estelle*, 496 F.2d 1177, 1178 (5th Cir. 1974) ("A more strict local rule may serve as a deterrent to lawless action. But it does not follow that Oklahoma's choice of a deterrent must be imposed upon the State of Texas to trigger application of the exclusionary rule via a nexus of federal constitutional law."); W. La Fave, *Search and Seizure* § 5(c), at 112 (1987).

Absent a denial of constitutional rights, the exclusionary rule will not bar evidence acquired in violation of the laws of another jurisdiction from being admitted in the forum jurisdiction. *People v. Price*, 54 N.Y.2d 557, 431 N.E.2d 267, 446 N.Y.S.2d 906 (1981) (possible violation of California law in constitutional narcotics search was irrelevant to the legality of a search warrant issued in New York based on evidence obtained in the search); *Burge v. State*, 443 S.W.2d 720 (Tex.Crim.) (violation of Oklahoma law in acquiring evidence did not bar evidence from being admitted in Texas court), *cert. denied*, 396 U.S. 934, 90 S.Ct. 277, 24 L.Ed.2d 233 (1969); *see Elkins v. United States*, 364 U.S. 206, 223–24, 80 S.Ct. 1436, 1447, 4 L.Ed.2d 1669 (1960) ("In determining whether there has been an unreasonable search and seizure by state officers, a federal court must make an independent inquiry, whether or not there has been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed."); *United States v. Mitchell*, 783 F.2d 971, 973 (10th Cir.) (in addressing the legality of a search by state officers which resulted in a United States district court conviction for drug possession the court of appeals stated "we need not consider whether the Oklahoma statute was satisfied or not.... The issue in this case is one under the fourth amendment and the exclusion of evidence would only be warranted if there were a violation of the Constitution of the United States") (footnote omitted), *cert. denied*, —— U.S. ——, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986); *United States v. Bedford*, 519 F.2d 650, 653–54 (3d Cir.1975) (state court decision that search warrant violated state law irrelevant to validity of warrant in federal court), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). By adopting a judicial balancing test, the majority has created unnecessary uncertainty regarding the application of the exclusionary rule. *See New Jersey v. T.L.O.*, 469 U.S. 325, 369–70, 105 S.Ct. 733, 758, 83 L.Ed.2d 720 (1985) (Brennan, J., joined by Marshall, J., concurring in part and dissenting in part) (in response to the majority's application of a judicial balancing test to define the fourth amendment standard of reasonableness for searches by school officials, Justice Brennan stated: "All of these 'balancing tests' amount to brief nods by the Court in the direction of a neutral utilitarian calculus while the Court in fact engages in an unan-

alyzed exercise of judicial will. Perhaps this doctrinally destructive nihilism is merely a convenient umbrella under which a majority that cannot agree on a genuine rationale can conceal its differences."); *see also United States v. Leon*, 468 U.S. 897, 929, 104 S.Ct. 3405, 3422, 82 L.Ed.2d 677 (1984) (Brennan, J., joined by Marshall, J., dissenting) ("the language of deterrence and of cost/benefit analysis, if used indiscriminately, can have a narcotic effect. It creates an illusion of technical precision and ineluctability"); Alienikoff, *Constitutional Law in the Age of Balancing*, 96 Yale L.J. 943 (1987) (discussing the problems inherent in judicial balancing). Accordingly, I concur in the result only.

I am authorized to say that VOLLACK, J., joins in this special concurrence.