■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAFAEL ALVAREZ, PEDRO MERETE, MIGUEL QUINONES, NOEL GUTIERREZ and WILSON GUERRERO, Respondents. — Order, Supreme Court, New York County (Goldman, J.), entered December 9, 1980, which granted defendant Alvarez' motion to suppress the handgun which all the defendants were charged with possessing illegally in Alvarez' car, unanimously reversed, on the law; the motion to suppress is denied and the matter remanded for further proceedings. Order, Supreme Court, New York County (Haft, J.), entered February 11, 1981, dismissing the indictment as to all defendants, unanimously reversed, on the law, the motion to dismiss the indictment is denied and the indictment is reinstated. On March 4, 1980, at approximately 11:45 P.M. Police Officer Carpenter, on patrol with his partner, Officer de la Torre in an unmarked car, observed a blue Ford with five occupants drive slowly past him. Several of the occupants looked at the two officers and pointed toward them. Carpenter observed the car make an illegal turn through a red light and, a few blocks later, pull to the curb and stop. Officer Carpenter stopped his car about 50 feet behind the Ford. After several minutes during which the officers saw the Ford's occupants watching them, the driver of the Ford left his car, walked back to the officers and asked, "Do you want me?" Carpenter said no, but asked the driver, defendant Alvarez, if he had the registration for the car. Officer Carpenter displayed his badge. Alvarez declared that he did not have the registration, at which point the officers left their patrol car and approached the Ford in which the four passengers remained. Officer Carpenter had his flashlight in his hand. The officer shone his flashlight inside the car at the ignition and then brought the beam across the floor in front of the driver's seat, where he observed, fully exposed, a six-inch gun. Carpenter then entered the car, seized the gun, and with his partner arrested Alvarez and the four passengers, defendants herein. The hearing court suppressed the gun on the ground that "flashing a light in the car under these circumstances was an unwarranted intrusion, despite the fact that there was no bodily intrusion at the time the light was flashed in by the officer". In our view, under the circumstances herein, the actions of the officer in shining his flashlight and looking into the car were entirely reasonable (see *People v Simmons*, 83 AD2d 79). "If this was an intrusion, it was so minimal as not to be disproportionate to the situation" (*People v Simmons, supra,* at p 80). Indeed, the Court of Appeals has duly noted "that use of a flashlight is not unreasonable even though it makes it possible for a police officer to make observations that would normally be foreclosed by the darkness. (*People v Cruz,* 34 NY2d 362, 370; *People v Sullivan,* 29 NY2d 69.)" (*People v Price,* 54 NY2d 557, 563.) In a footnote, the Court of Appeals distinguished its holding in *People v Smith* (42 NY2d 961) that the use of a flashlight constituted an unwarranted intrusion, observing that (p 563, n 3) "[t]he holding in that case, however, was based on the fact that the initial stop by the police of the defendant's car was unreasonable". There is no analogous unreasonable stop in the instant matter. In light of the above analysis, it is unnecessary to consider whether the defendants who were passengers had standing to move to suppress the evidence (see *People v Simmons, supra*). Concur — Murphy, P. J., Lupiano and Fein, JJ.

Markewich, J., concurs in a memorandum and Bloom, J., concurs in the majority memorandum and in the concurring memorandum of Markewich, J.,

which follows: While I concur in the memorandum for the court, I find omission of a key factor which should strip away any possible basis for a conclusion on these facts that the shining of a flashlight into defendants' car was an unwarranted intrusion. This factor was that the driver of the car lacked a registration for that vehicle. The decision so to do had a predicate in reason in that there was presented the possibility that the car might have been stolen, and based on police experience, that a "jump connection" might have been utilized for the purpose, in which event that possibility might have become absolute. Thus, it became important to shine the light into the car to observe the presence or absence of the ignition key. The so-called intrusion was thus dictated by a circumstance brought into the picture, not by the police, but by the driver, and culminated in the gun's discovery.