OPINION OF THE COURT
Philip J. Chetta, J.
A hearing to contest the seizure of physical evidence was conducted on July 13, 1985. Detective Frank Ellis of the Port Authority Police Department testified on behalf of the People and defendant Clover Barronette testified on her own behalf. Based upon the testimony of the witnesses, the court makes the following findings of fact and conclusions of law.
On January 8, 1985, Detective Ellis, who was assigned to the Organized Crime Intelligence Unit at Kennedy Airport, received telephonic communication from Detective John Fachiamo (phonetic) of the Metro Dade Police Department that a suspected drug courier would be arriving on TWA flight No. 4. The courier was described as a female black, approximately six feet in height, weighing 125-140 pounds, with braided hair, pink top and dark pants. In response to the telephonic com *799 munication, Ellis arranged with United States Customs to provide him with a dog trained to detect narcotics.*
When flight No. 4 arrived, Ellis arranged for the dog to sniff all the luggage that was removed from the plane. Ellis testified that the dog, "activated on two pieces of luggage.” This luggage was then placed back on the conveyor belt and allowed to enter the passenger pick-up area. The officers observed a male black and a female black, approximately five feet, eight inches tall, braided hair, pink top, dark pants, pick up the two pieces of luggage in question and walk out of the terminal. At this point, the individuals who were later identified as defendants Clover Barronette and Talbert Thomas, were placed under arrest, handcuffed and taken back to building 269 at Kennedy Airport. After their arrest, defendants were advised of their Miranda rights. In response to Ellis’s request that defendants allow him to open the bags, Thomas indicated that the bags were not his. Barronette stated, "You can’t open the bags, they’re not mine.” After two or three more requests, Ellis contended that Barronette finally stated, "They ain’t my bags, you can open them up.” After consulting with an Assistant District Attorney by phone Ellis, without a warrant, opened the bags and retrieved a quantity of narcotics.
Defendant Clover Barronette testified that a passenger named George on flight No. 4 asked her to retrieve his luggage while he went to get his car. She stated that she picked up the luggage in question and was subsequently arrested as she left the airport. Barronette stated that Ellis asked for permission to open the luggage but she told him that she could not give him permission because it was not her luggage. She stated that Ellis made this request several times and that she never consented to the opening of the luggage.
The People have contended that the defendant lacks standing based upon the above testimony to contest the seizure and opening of their luggage as violative of their 4th Amendment rights. Before reaching its decision the court must first determine whether the initial seizure of the defendants’ persons, for which there is no question that standing exists, prior to the search of the luggage, was permissible. In this regard, the *800 court finds ample probable cause existed for the stop and arrest of the defendants. To begin with, Detective Ellis was provided with a detailed description of a known drug courier from a Dade County detective. This description closely matched the defendant’s appearance on the day in question. While the specificity of detail may not be sufficient to establish probable cause (see, People v Elwell, 50 NY2d 231), the detection of narcotics in luggage subsequently claimed by the defendants by a trained police dog supplied adequate indicia of criminality to support Ellis’s arrest of the defendants. (See, People v Price, 54 NY2d 557.)
Having concluded that the arrest was proper, the court must determine whether the defendants have standing to contest the subject search and seizure of the luggage in question. The issue of standing is of extreme importance as absent a finding of consent the warrantless search of defendants’ luggage is clearly impermissible. (See, United States v Chadwick, 433 US 1; People v Price, supra, at pp 563-564.)
The People argue that given defendants’ disavowal of ownership in the suitcase they lack standing to contest the subject search and seizure of the suitcases and marihuana. In determining this issue, the court will accept the testimony of defendant Barronette that she was merely claiming the luggage as a favor to a passenger on the plane.
It is well established that 4th Amendment rights are personal and may only be claimed by those whose rights have been interfered with.
"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.” "We adhere * * * to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.” (Alderman v United States, 394 US 165, 171, 174.)
In determining who has a right in the property searched by the police, so as to advance a 4th Amendment claim, the Supreme Court has formulated an inquiry which focuses on whether the individual had a legitimate expectation of privacy in the property searched. That the property might be introduced against the defendant at trial does not in and of itself create an expectation of privacy. (See, United States v Salvucci, 448 US 83, overruling the automatic standing rule in *801 Jones v United States, 362 US 257.) The expectation of privacy test has been adopted in this State. (See, People v Ponder, 54 NY2d 160.)
In the instant matter, both defendants disclaimed ownership in the property. Defendant Barronette’s disclaimer, however, differed from that of her codefendant Thomas in that she claimed she did not have the authority to grant permission to search the suitcase. As to defendant Thomas, it is beyond cavil that by disclaiming ownership in the property he has failed to establish an expectation of privacy. (See, United States v Módica, 663 F2d 1173 [2d Cir 1981].) As to defendant Barronette, by stating that she lacked authority to grant permission for the search, she has raised the issue of whether her lawful physical custody at the behest of the owner at the time of the stop was sufficient to give her an expectation of privacy in the suitcase notwithstanding her denial of ownership. "A person who is not the owner of the container but who possesses it by virtue of his status as a bailee certainly has standing to object to a legal interference with his possessory interest.” (3 LaFave Search & Seizure § 11.3, at 297 [1985 Pocket Part].)
However, in determining whether the arrangement between the defendant and George gave defendant a reasonable expectation of privacy in the luggage, the court must examine, "the relationship between the travelling companions, the conditions of the bailment, [and] the precautions taken to maintain privacy” (see, United States v Rodriguez-Ramos, 704 F2d 17, 21 [1st Cir 1983]).
With regard to the present facts, defendant’s relationship with the unknown fellow passenger was of a fleeting, momentary nature. Indeed, she did not even know his last name or ever see him after leaving the airplane. As to any agreement between George and defendant Barronette, which might be construed as a bailment, it appears to be nothing more than an informal request to claim his luggage momentarily while he picked up his car. A bailment has been defined as, "the delivery of personal property by one person to another in trust for a specific purpose, on a contract, express or implied, that the trust shall be faithfully executed and the property returned and duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.” (See, 8 CJS, Bailments, § 1, n 2.5, at 313.)
Defendant’s mere acquiescence to George’s request to claim his luggage fails to exhibit any indicia of a bailment. Indeed *802 defendant did not even have the authority to grant Ellis permission to open the luggage. Given the precipitous nature of the agreement with copassenger George (see, Rawlings v Kentucky, 448 US 98, 105), defendant’s lack of any indicia or claim of ownership and the brief physical custody that defendant had of the subject luggage, which by her own testimony she intended to immediately turn over to George upon claiming it, leads this court to conclude that defendant has failed to establish an expectation of privacy in the luggage.
Accordingly, the court finds that defendant Barronette lacked standing to contest the seizure of the luggage as violative of her 4th Amendment rights.
For purposes of clear appellate review and assuming, arguendo, that standing had been established, the court would find that under the circumstances consent had not been established by the People. In reaching this conclusion the court shall assume the veracity of Detective Ellis’s testimony that after initial resistance defendant Barronette consented to the search.
One of the limited exceptions to the warrant requirement is voluntary consent to search. The People have the burden of proving the voluntariness of the consent.
Consent to search must be a free and unconstrained choice. "Official coercion, even if deviously subtle, nullifies apparent consent. Whether consent has been voluntarily given or is only a yielding to overbearing official pressure must be determined from the circumstances.” (People v Gonzalez, 39 NY2d 122, 124.)
Gonzalez (supra) sets forth various factors that should be considered in determining the voluntariness of the consent. The first factor, "is whether the consenter is in custody or under arrest, and the circumstances surrounding the custody or arrest.” (Supra, p 128.) In the instant case the defendant was requested to give her consent to the searching of the luggage subsequent to her arrest.
The court in Gonzalez found that, "the fact that [the] defendant [had been] handcuffed [was] * * * a significant factor in determining whether his apparent consent was but a capitulation to authority” (supra, at p 129). In the instant case, the record shows that the defendant was in fact handcuffed prior to consenting to the opening of the luggage.
"Another factor to be considered in determining the voluntariness of an apparent consent is the background of the consenter [citations omitted]. A consent to search by a case *803 hardened sophisticate in crime, calloused in dealing with police, is more likely to be the product of calculation than awe.” (People v Gonzalez, supra, p 129.)
In the present case the defendant who offered consent, Clover Barronette, was alleged to be a drug courier. However, court records fail to disclose any previous arrests. Given the lack of a criminal record and the absence in the testimony of any substantiation of the Miami police claim regarding her prior drug dealings, the court must assume Barronette had limited prior contact with the police. Being unfamiliar with standard police procedures she could easily be pressured or manipulated. Under these circumstances, it is probable that the consent was not, "the product of a free and unconstrained choice.” (People v Gonzalez, supra, p 129.)
"Another factor to be considered is whether the consenter has been, previously to the giving of the consents * * * evasive or un-co-operative with the law enforcement authorities” (People v Gonzalez, supra, p 129). In the present case, the defendant and Detective Ellis claimed that the defendant first asserted she could not give consent to the search of the luggage as the suitcase belonged to someone else. This conduct may be equated with evasive and uncooperative behavior. "Such determined resistance and evasion is hardly compatible with a suddenly voluntary consent” (People v Gonzalez, supra, p 130).
"A final factor is whether a defendant was advised of his [or her] right to refuse to consent” (People v Gonzalez, supra, p 130). In the instant case, the record is devoid of any such information being communicated to the defendant prior to her giving consent. While the failure to advise the defendant of this right is not determinative of the issue, it is a factor to be considered along with the aforementioned factors in determining whether consent was voluntary.
Accordingly, based on the above factors, the court finds that the People have not met their burden of establishing that the defendant voluntarily consented to the search of the luggage. The court also finds that as the suitcases and the defendants were under the control of the police, no exigency existed. Given the lack of exigent circumstances, the warrantless search of the suitcases was unlawful. (See, United States v Chadwick, 433 US 1, supra; People v Price, 54 NY2d 557, supra.) However, as defendant lacks standing, defendants’ motion to suppress physical evidence is denied.

 The defendants stipulated that the dog is reliable in sniffing out controlled substances and that it would react to the discovery of said substance in the manner testified to by the detective. Defendants also stipulated that the dog had been employed by Customs for five years and had been trained for the above-stated purposes.